STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ALAN F. ESTEVES, DEFENDANT-RESPONDENT.

Argued March 7, 1983—Decided July 11, 1983.

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*Steven D. Altman* argued the cause for respondent (*Benedict and Altman,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

This appeal questions the admissibility of evidence found in the search of the interior of an automobile following discovery of what appeared to be a weapon. The trial court admitted the evidence because its discovery was incidental to the defendant's arrest and because the possible presence of other weapons made

the search reasonable under the circumstances. In an unreported decision, the Appellate Division reversed. In its opinion, the only possible basis for a warrantless search was a search incident to a lawful arrest. It ruled that, although the search may have been lawful under *New York v. Belton,* 453 *U.S.* 454, 101 *S.Ct.* 2860, 69 *L.Ed.*2d 768 (1981), it was bound by *State v. Welsh,* 84 *N.J.* 346 (1980), which held that the execution of an arrest warrant justifies only "a search of the arrestee's person and the area 'within his immediate control.'" *Id.* at 354 (quoting *Chimel v. California,* 395 *U.S.* 752, 763, 89 *S.Ct.* 2034, 2040, 23 *L.Ed.*2d 685, 694 (1969)). Therefore it found the search unlawful. We granted certification to review that determination. 91 *N.J.* 541 (1982). Because there was probable cause for the automobile search, we find the search valid and reverse.

I.

On August 31, 1980, the East Brunswick Police dispatched officers to investigate a possible robbery in progress at a local meat market. The dispatch related that a man with a gun was seen in an orange Volkswagen. Upon arriving at the scene the police first went to the store. The shopkeeper told them that no robbery was in progress, and they turned their attention to the car in the parking lot. One officer saw what appeared to be a small handgun between the two front seats and informed his partners. The officers then questioned the store's customers as they exited, including this defendant and another, Holahan. Holahan admitted that the car was his. The police conducted a patdown search of both and asked for identification. Neither had any conclusive identification on his person. Holahan said that his identification was in the car and Esteves said that his was in a knapsack in the car. Both defendants walked to the car accompanied by the police.

When they got to the car, Holahan gave the keys to the police. One officer opened the door and took out what appeared to be a gun. He opened the cylinder, found that it was unloaded, and

held it over his head to show his partner. It turned out later that it was a starter pistol. Another officer began to search the car for the identification. In searching Holahan's shaving kit, the officer found an open film can that contained a foil packet, inside of which were pills. He then found two other pills in the bottom of the kit. The pills contained diazepam and methaqualone, controlled dangerous substances. In searching Esteves' knapsack, he found dried psilocybe mushrooms, a Schedule I controlled dangerous substance whose active ingredient is chemically related to LSD.

Both defendants were indicted for possession of controlled dangerous substances in violation of *N.J.S.A.* 24:21–20(a)(1). Holahan was diverted under *N.J.S.A.* 24:21–27(a)(1).

Esteves moved to suppress the evidence found in the search of the car. At the motion hearing, both officers testified that they did not know until the search was completed that the weapon seized was a starter pistol. The State made no attempt to prove that the starter pistol was a "weapon" under *N.J.S.A.* 2C:39–1(r) and 2C:39–5 (unlawful possession of weapons). The officer who made the search testified that the primary object of the search was to obtain identification and that he also wanted to be sure there were no other weapons. Neither officer testified that they placed the defendants under arrest, although one testified that the defendants were not free to leave.

The trial court found that no magic words were needed to demonstrate that the defendants were under restraint. In its view the search was justified on grounds of the officers' safety and because it was incidental to what the court viewed as an arrest.

Esteves pled guilty after the judge denied his motion to suppress the evidence. He was sentenced to a term of probation for three years and fined $100, payable to the Violent Crimes Compensation Board. He appeals from the denial of the motion to suppress.

## II

The principles that guide us are settled:

Certain fundamental propositions bear restatement at the outset. The Fourth Amendment to the United States Constitution requires the approval of an impartial judicial officer based on probable cause before most searches may be undertaken. *E.g., Chambers v. Maroney,* 399 *U.S.* 42, 51, 90 *S.Ct.* 1975, 1981, 26 *L.Ed.2d* 419, 428, *reh. den.,* 400 *U.S.* 856, 91 *S.Ct.* 23, 27 *L.Ed.2d* 94 (1970). The same holds true for Article 1, paragraph 7 of the New Jersey Constitution. *State v. Ercolano,* 79 *N.J.* 25, 41–42 (1979), and cases cited therein. The warrant requirement of these provisions may be dispensed with in only a few narrowly circumscribed exceptions. The *prima facie* invalidity of any warrantless search is overcome only if that search falls within one of the specific exceptions created by the United States Supreme Court. *Ercolano, supra,* 79 *N.J.* at 42. Where, as here, the State seeks to validate a warrantless search, it bears the burden of bringing it within one of those exceptions. *State v. Sims,* 75 *N.J.* 337, 352 (1978). [*State v. Patino,* 83 *N.J.* 1, 7 (1980)].

The problem with this case is that the search fits neatly into no category, although arguably fitting into several. The officers asserted a mixture of reasons for their actions. It is not strictly speaking covered by *Chimel,* since the police were not searching the defendant's person or the area within his immediate control, or a search incident to the custodial arrest of the recent occupant of an automobile as defined in *Belton.* There the Court held that as an incident to a lawful arrest, the police could conduct a warrantless search of any items or containers found within the passenger compartment of an automobile occupied by the suspect at the time of the arrest. By the same token, this is not a luggage search where the purpose of the search was to discover contraband. *Arkansas v. Sanders,* 442 *U.S.* 753, 99 *S.Ct.* 2586, 61 *L.Ed.2d* 235 (1979) (reasoning disapproved in *United States v. Ross,* 456 U.S. 798, 824, 102 *S.Ct.* 2157, 2172, 72 *L.Ed.2d* 572, 593 (1982)); *United States v. Chadwick,* 433 *U.S.* 1, 97 *S.Ct.* 2476, 53 *L.Ed.2d* 538 (1977).

In analyzing the validity of warrantless searches, we have stated that "the strands of constitutional exceptions to the Fourth Amendment must be kept untangled." *Welsh,* 84 *N.J.* at 354. Although this is a sound principle, it is sometimes hard for the officer on patrol to recognize instantly the strands of a legal theory in the rapidly unfolding events of a suspected crime.

And, unfortunately, "this branch of the law is something less than a seamless web." *Cady v. Dombrowski,* 413 *U.S.* 433, 440, 93 *S.Ct.* 2523, 2527, 37 *L.Ed.2d* 706, 714 (1973). Justice White has recently reminded us that there is no "litmus-paper test" for determining when a seizure exceeds the bounds of an investigative stop and that "it is unlikely that the courts can reduce to a sentence or a paragraph a rule that will provide unarguable answers to the question whether there has been an unreasonable search or seizure in violation of the Fourth Amendment. Nevertheless, we must render judgment...." *Florida v. Royer,* —— U.S. ——, ——, 103 *S.Ct.* 1319, 1329, 75 *L.Ed.2d* 229, 242 (1983).

### III.

 Although there· is no unarguable answer here, two factors direct the result. The first is that although expectations of privacy in the contents of an automobile are significant, they never have been granted the protection accorded the home. *Patino,* 83 *N.J.* at 8. Thus under the automobile exception, police may stop and search a moving or readily movable vehicle when there is probable cause to believe the vehicle contains criminally-related objects. "The rationale for this exception is grounded in the exigent circumstances created by the inherent mobility of vehicles and the somewhat lessened expectation of· privacy in one's vehicle." *Id.* at 9.[1] As a result, an automobile

---

[1] Even while dissenting in *Ross,* Justice Marshall has written:

[T]his Court has refused to require a warrant in situations where the process of obtaining such a warrant would be more intrusive than the actual search itself. Cf. *Katz v. United States,* 389 *U.S.* 347, 19 *L.Ed.2d* 576, 88 *S.Ct.* 507 (1967). A defendant may consider the seizure of the car a greater intrusion than an immediate search. See *Chambers,* 399 *U.S.* at 51–52, 26 *L.Ed.2d* 419, 90 *S.Ct.* 1975 [1981]. Therefore, even where police *can* bring both the defendants and the automobile to the station safely and can house the car while they seek a warrant, the police are permitted to decide whether instead to conduct an immediate search of the car. In effect, the warrantless search is permissible because a warrant requirement would not provide significant protection of the defendant's Fourth Amendment interests. [*Ross,* 456 *U.S.* at 831, 102

search is justified, not by the existence of a warrant, but by the circumstances that furnish the officers with probable cause. *State v. Young,* 87 *N.J.* 132 (1981) (holding, under pre-*Chadwick* law, that probable cause to believe crimes were being committed with car justified search of car and contents including suitcase).

■ It is unnecessary for us, then, to resolve whether the defendant was arrested and, if so, the extent of the search that could be made incidental to the arrest. Rather, we test this search by the rules governing warrantless automobile searches. *Cardwell v. Lewis,* 417 *U.S.* 583, 94 *S.Ct.* 2464, 41 *L.Ed.*2d 325 (1974); *Chambers v. Maroney,* 399 *U.S.* 42, 90 *S.Ct.* 1975, 26 *L.Ed.*2d 419 (1970); *Carroll v. United States,* 267 *U.S.* 132, 45 *S.Ct.* 280, 69 *L.Ed.* 543 (1925). In *State v. Martin,* 87 *N.J.* 561 (1981), noting the significance of a readily movable vehicle, we held that when police have probable cause to conduct a search of an automobile, they may do so at the place where they encounter the vehicle. Indeed, police may remove the vehicle to police headquarters before conducting the search without obtaining a warrant. *See Texas v. White,* 423 *U.S.* 67, 96 *S.Ct.* 304, 46 *L.Ed.* 2d 209 (1975); *State v. LaPorte,* 62 *N.J.* 312 (1973); *cf. State v. Ercolano,* 79 *N.J.* 25, 46 (1979) (warrant called for when it is "readily practicable" based upon advance knowledge that the car would be used in criminal activity).

■ In reviewing the circumstances to determine whether probable cause existed, we must keep in mind that probable cause is not a technical concept, but one drawn from the "practical considerations of everyday life" as tested by reasonable persons. *Brinegar v. United States,* 338 *U.S.* 160, 175, 69 *S.Ct.* 1302, 1310, 93 *L.Ed.* 1879, 1890 (1949). In *State v. Alston,* 88 *N.J.* 211 (1981), we stressed the significance of weapons when these are the object of the search or a concern relating to the safety of the police officers. There we upheld a search of a car

*S.Ct.* at 2176, 72 *L.Ed.*2d at 598 (Marshall, J., dissenting) (emphasis in original) ].

that revealed two handguns after the police had seen a shotgun and live shotgun shells in the car. Here, had the police expressly couched their search as one for weapons, given that they were investigating a weapons offense, and had already discovered what appeared to be a weapon, it would follow that the police would have had probable cause to search swiftly for concealed weapons.[2] *Welsh* teaches that the essential ingredient is probable cause. 84 *N.J.* at 352. There, after arresting the defendant, the police searched his car before permitting him to drive it to the police station. That search disclosed illegal betting slips. Since the police lacked probable cause to believe that the vehicle contained weapons or destructible evidence, the Court invalidated the search. Significantly, the majority of the *Welsh* Court did not find the search justifiable as "legitimately precautionary." 84 *N.J.* at 355.

Legitimate precaution justifies routine police procedures not designed as pretexts to discover evidence and is the second factor that guides our decision here. In *Cady,* the Court sustained a search of the car of an arrested police officer for the weapon he would be expected to carry, which led to discovery of blood-stained objects, which in turn led to a conviction of murder. The Court sustained the search as routine, not carried out to discover evidence but to accomplish a legitimate police purpose. 413 *U.S.* at 447–48, 93 *S.Ct.* at 2530–31, 37 *L.Ed.2d* at 718. In Esteves' case, the routine police purpose of identifying the defendants was coupled with a legitimate concern for the personal safety of the searching police officers.

■ When a police officer "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest," his conduct is judged by "whether a reasonably prudent man in the circumstances

---

[2] We respect the Appellate Division's conclusion that it was bound by *Welsh.* Had it felt free to apply the teaching of *Belton,* with respect to all containers within the passenger compartment of an automobile, we believe it would have reached the result we do.

would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio,* 392 *U.S.* 1, 27, 88 *S.Ct.* 1868, 1883, 20 *L.Ed.*2d 889, 909 (1968) (exception to the probable cause requirement for "stop and frisk" for the protection of the officer). Thus, when an individual has left his vehicle and has been subjected to a *Terry* search, courts have upheld limited searches of the vehicle since "defendants would have returned to their vehicle and, had there been a weapon, the weapon would then have been within the reach of the defendants." *State v. Brown,* 160 *N.J.Super.* 227, 234 (Law Div.1978); *accord State v. Wausnock,* 303 *A.2d* 636, 637 (Del.Sup.Ct.1973); *State v. Darling,* 393 *A.2d* 530, 532–33 (Me.Sup.Jud.Ct.1978); *Commonwealth v. Almeida,* 373 *Mass.* 266, 272, 366 *N.E.2d* 756, 760 (Mass.Sup. Jud.Ct.1977). *See also Welsh,* 84 *N.J.* at 359 (Handler, J., dissenting).

### IV.

■ The constitutional dimension of the police officer's conduct need not depend upon the turn of phrase that he uses in describing his course of action. *See State v. Guerra,* 93 *N.J.* 146, 153 (1983). As this officer put it:

> My only particular concern at that point in time was to obtain the identification and rather than run the risk of another weapon possibly being in any of the items and letting the individuals get their Id. That was for our protection. And that's why they were isolated in the rear and that's why I proceeded to look for the identification.

■ We are satisfied that probable cause existed for the officers to search the car and to take reasonable precautions for their own safety. They had been advised of a possible robbery and had seen what appeared to be a pistol in the car. When, in addition, neither Esteves nor Holahan could produce satisfactory identification, the police had a sufficient basis to search the automobile for weapons or to obtain identification. Nor was the

extent of the search unreasonable.[3] The scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that it may be found. *Guerra,* 93 *N.J.* at 151; *Alston,* 88 *N.J.* at 217 (shotgun shells in glove compartment justified search of passenger compartment and seizure of opaque plastic bag containing shotgun). Under these circumstances, the police had probable cause and therefore a right to search as they did. They found no other weapons or satisfactory identification in the front or in the glove compartment. The shaving kit could reasonably have contained either weapons, shells or I.D., and so the police had the right to check it. In doing that they came upon the pills in the foil packet in the film container and two other pills in the bottom of the kit.

Defendant argues that it was unreasonable to look for a gun or identification in a film container. The outer limits of reasonableness would be strained in this case if the only evidence had been retrieved from the foil wrapper, an unlikely container for identification or weapons. But here the police found the psilocybe mushrooms (a Schedule I controlled dangerous substance) loose in the knapsack pocket, which they were authorized to search, and two other pills loose in the shaving kit. Since the indictment covered all three controlled dangerous substances, drawing such a fine line on this search serves little purpose.

In the circumstances of this case the officers had probable cause to search the interior of the motor vehicle and reasonable prudence dictated the officers' course in the interests of their safety. Accordingly, we find that the search was valid. We

---

[3]The Supreme Court has now held (after the date of this search) that once probable cause exists to search the interior of a motor vehicle, the police may search every part of the vehicle, including containers, in which there is probable cause to believe that the object of the search may be found. *Ross,* 456 *U.S.* at 824, 102 *S.Ct.* at 2172, 72 *L.Ed.2d* at 593 (adapting the rule of *Belton* to the automobile exception and rejecting the precise holding of *Robbins v. California,* 453 *U.S.* 420, 101 *S.Ct.* 2841, 69 *L.Ed.2d* 744 (1981)).

reverse the judgment of the Appellate Division and reinstate the order of the trial court denying the motion to suppress.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance*—None.