**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3531-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DEVON KING,

    Defendant-Appellant.

_____

Argued May 24, 2018 — Decided June 8, 2018

Before Judges Haas and Rothstadt.

On appeal from Superior Court of New Jersey,
Law Division, Hudson County, Indictment No.
16-06-0794.

Rochelle Watson, Assistant Deputy Public
Defender, argued the cause for appellant
(Joseph E. Krakora, Public Defender, attorney;
Rochelle Watson, of counsel and on the brief).

Jennifer E. Kmieciak, Deputy Attorney General,
argued the cause for respondent (Gubir S.
Grewal, Attorney General, attorney; Jennifer
E. Kmieciak, of counsel and on the brief).

PER CURIAM

    After the trial judge denied his motion to suppress thirty

small bags of crack cocaine found in a magnetic key holder that

was attached to the wheel well of his car, defendant pled guilty to third-degree possession of a controlled dangerous substance (CDS). The judge sentenced defendant to two years of probation.

On appeal, defendant raises the following contentions:

> THE EVIDENCE RECOVERED FROM THE MAGNETIC KEY HOLDER MUST BE SUPPRESSED BECAUSE IT IS THE FRUIT OF AN UNLAWFUL INVESTIGATORY STOP. ALTERNATIVELY, THE SEARCH OF THE WHEEL WELL OF DEFENDANT'S CAR WITHOUT PROBABLE CAUSE VIOLATED BOTH THE STATE AND FEDERAL CONSTITUTIONS.
>
> A.   The Investigatory Stop Was Not Supported By Reasonable Suspicion.
>
> B.   Under Both State and Federal Law, The Police Effected an Unconstitutional Search When They Intruded Into Defendant's Wheel Well to Detach the Magnetic Key Holder.
>
> C.   The Opening Of The Magnetic Key Holder Constituted An Independent Fourth Amendment Search That Was Not Supported By Probable Cause.

After reviewing the record in light of the arguments advanced on appeal, we affirm, but for reasons other than those expressed by the trial judge.[1]

In lieu of presenting testimony at the suppression hearing, the parties stipulated to the facts set forth in the relevant

---

[1] See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (stating that an appellate court is "free to affirm the trial court's decision on grounds different from those relied upon by the trial court").

police report, which the judge read into the record. On January 14, 2006, three police officers were among a group of officers assigned to conduct a surveillance of a street because there had been "several citizen complaints of narcotics activity in that area[.]" At approximately 12:30 p.m., the officers saw defendant, who was "a known drug dealer," getting in and out of a silver Lexus that was parked on the street. There were two other men in the car.

As they continued to watch defendant, the officers saw an older man approach the car with "currency in his hand[.]" Defendant got out of the car and spoke to the man. Defendant then went to the driver's side front tire, "reached down and appeared to be looking for something near the tire." Based upon the officers' "training and experience with CDS arrests and investigations, [they] believed the males were engaged in a CDS transaction."

Defendant spotted the officers as they began to approach him. Defendant told the older man "to walk away" and then moved to the rear of his car. The officers stopped defendant and the other man, and directed the other two males to get out of the car.

One of the officers went to the front of the car and "looked in the area where [defendant] was looking and recovered a magnetic key hold[er] attached to the vehicle's wheel well." The report

explained that a key holder like the one found in the wheel well was "a common tool used by . . . drug dealers to hide their narcotics." An officer opened the container and found thirty small bags of crack cocaine. According to the report, the key holder had to have been placed in the wheel well "when the vehicle was stopped or it would have fallen . . . while [the car was] in motion." The officers then arrested defendant, his suspected customer, and the two men in the car.

Under the totality of these circumstances, the judge found that the police had a reasonable suspicion that defendant was engaged in a drug transaction and, therefore, they conducted an appropriate investigatory stop. Drawing an analogy between the facts of this case and those involved in our decision in State v. Jessup, 441 N.J. Super. 386, 388-89 (App. Div. 2015),[2] the judge found that defendant did not have "a reasonable expectation of privacy" in the key holder because anyone present near the car could see defendant placing it in, and removing it from, the area near his front tire, suspect it might contain contraband, and then easily take it from the wheel well if defendant left the scene.

---

[2] In Jessup, we upheld the validity of a search for, and seizure of, a zip-lock bag after the police observed the defendant removing it from the top of a car's rear tire, taking items from the bag, and returning the bag to the top of the tire. Id. at 388. The defendant then gave the items to another man in exchange for money. Ibid.

Thus, the judge concluded the police properly seized and opened the key holder without a warrant.

Although raised by the State in its brief in opposition to defendant's suppression motion, the judge did not address whether the search was proper under the "automobile exception" to the warrant requirement as set forth in the Supreme Court's then-recent decision in State v. Witt, 223 N.J. 409 (2015), decided less than four months prior to the January 14, 2016 investigatory stop in this case.

In Witt, the Court abandoned the "pure exigent-circumstances requirement" it had added to the constitutional standard to justify an automobile search and returned to the standard set forth in State v. Alston, 88 N.J. 211 (1981). Witt, 223 N.J. at 414. Thus, the Court held "that a warrantless search of an automobile was constitutionally permissible, provided that the police had probable cause to search the vehicle and that the police action was prompted by the 'unforeseeability and spontaneity of the circumstances giving rise to probable case.'" Ibid. (quoting Alston, 88 N.J. at 233).

The Court made clear that the Witt standard was to be "given prospective application from the date of [its] opinion[,]" and, therefore, it was in effect at the time of both the January 14, 2016 investigatory stop and the judge's September 12, 2016

decision. Because the reestablished automobile exception to the warrant requirement plainly justified the police officers' actions in this case, we need not address the trial judge's determination that defendant lacked a reasonable expectation of privacy in the key holder.

On appeal, defendant argues that investigatory stop was improper because the police did not have a reasonable suspicion that defendant was engaged in criminal activity. We disagree.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). In reviewing a motion to suppress evidence, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting Robinson, 200 N.J. at 15). We do not, however, defer to a trial judge's legal conclusions, which we review de novo. Ibid.

It is well settled that the police may lawfully stop a motor vehicle and detain the motorists in order to investigate suspicious conduct. State v. Stovall, 170 N.J. 346, 356 (2002). Such an "investigatory stop," also known as a Terry stop, is characterized by a detention in which the person approached by a police officer would not reasonably feel free to leave, even though the encounter

falls short of a formal arrest.  Id. at 355-56; see also Terry v. Ohio, 392 U.S. 1, 19 (1968).

During a Terry motor vehicle stop, a police officer may detain individuals for a brief period, if the stop was "based on reasonable and articulable suspicion that an offense . . . has been or is being committed."  State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40 (2002)). Whether a reasonable and articulable suspicion exists depends upon the totality of the circumstances.  State v. Pineiro, 181 N.J. 13, 22 (2004).

In evaluating the totality of the circumstances surrounding a Terry stop, a reviewing court must balance "the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions." State v. Davis, 104 N.J. 490, 504 (1986).  As the Supreme Court observed in Davis:

> Such encounters are justified only if the evidence, when interpreted in an objectively reasonable manner, shows that the encounter was preceded by activity that would lead a reasonable police officer to have an articulable suspicion that criminal activity had occurred or would shortly occur.  No mathematical formula exists for deciding whether the totality of circumstances provided the officer with an articulable or particularized suspicion that the individual in question was involved in criminal activity. Such a determination can be made only through

> a sensitive appraisal of the circumstances in each case.
>
> [<u>Davis</u>, 104 N.J. at 505.]

In reviewing the "totality of the circumstances," we are also required to "give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" <u>State v. Citarella</u>, 154 N.J. 272, 279 (1998) (quoting <u>State v. Arthur</u>, 149 N.J. 1, 10-11 (1997)). "The fact that purely innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions as long as 'a reasonable person would find the actions are consistent with guilt.'" <u>Id.</u> at 279-80 (quoting <u>Arthur</u>, 149 N.J. at 11).

Applying these principles, we discern no basis for disturbing the trial judge's determination that based upon the totality of the circumstances presented to them, the officers had a reasonable suspicion that defendant and the older man were engaged in a drug transaction. As detailed above, the police were in the area because of citizen complaints of narcotics activity. During their surveillance, the officers saw defendant, a known drug dealer, speak to the man, who was already holding money in his hand. Defendant then went to the wheel well of his car, which the

officers knew from their experience was a place that dealers stored their drugs in key holders. As the officers moved in, defendant told the other man to leave the area.

Viewed through the prism of the officers' experience in conducting drug trafficking investigations, it was entirely appropriate for the police to reasonably suspect that defendant was engaging in a narcotics transaction with the other man. Therefore, the Terry stop of defendant and his vehicle was clearly appropriate.

Under Witt, the State must next demonstrate the officers had probable cause to believe the vehicle contained contraband. 223 N.J. at 414. Defendant contends the State failed to meet that burden but again, we disagree.

In order to establish probable cause to conduct a search, the State must show from the totality of the circumstances that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Chippero, 201 N.J. 14, 28 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)). The standard was clearly met here. Again, the police observed defendant looking for something near the tire of his car after speaking to the man who had approached him with money in his hand. Based on the officers' experience in narcotics investigations, they reasonably believed that defendant, a known

drug dealer, had stored his drugs in the wheel well area of his car and was retrieving them to complete the sale. Thus, there was more than "a fair probability" that defendant's stash was located near the front tire of defendant's car, and the police therefore had probable cause to search there for the suspected contraband. Ibid.

As required by Witt, the officers' probable cause arose from unforeseeable and spontaneous circumstances, 223 N.J. at 414, and defendant does not contend otherwise. The police were conducting a surveillance of the street because they had received citizen complaints of drug dealing in the area. They were not specifically looking for either defendant or his car at the time they saw him engaged in a suspected drug transaction. Therefore, the search was fully justified by the automobile exception reestablished in Witt.

Finally, defendant argues that even assuming that the police were permitted to look into the wheel well and take out the key holder, they were not permitted to open it without a warrant. This argument also lacks merit. Indeed, it is well settled "that once probable cause exists to search . . . a motor vehicle, the police may search every part of the vehicle, including containers, in which there is probable cause to believe that the object of the search may be found." State v. Esteves, 93 N.J. 498, 508 n.3

10                                                    A-3531-16T3

(1983) (citing <u>United States v. Ross</u>, 456 U.S. 798, 824 (1982));

<u>see also</u> <u>State v. Probasco</u>, 220 N.J. Super. 355, 359 (App. Div.

1987) (citations omitted).  As noted above, the officers stated

in their report that key holders are frequently used by drug

dealers as storage containers for their narcotics, and the key

holder was found in the same area of the car where defendant had

been looking in response to his conversation with his suspected

customer.  Therefore, the officers did not need a warrant to open

the key holder, where they found thirty small bags of crack

cocaine.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION