**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2994-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MANTWAN J. THOMAS, a/k/a
MANTWAN THOMAS, and
ANTWOINE THOMPSON,

    Defendant-Appellant.

_____

Submitted October 24, 2023 – Decided November 14, 2023

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 21-08-0498.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Mantwan J. Thomas appeals from the January 25, 2022 Law Division order denying his motion to suppress physical evidence seized during a warrantless search of his vehicle following a motor vehicle stop. Having considered the arguments in light of the record and applicable legal principles, we affirm.

On August 12, 2021, a Union County grand jury indicted defendant on the following charges: second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10a(1); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4); and first-degree unlawful possession of a weapon by a person previously convicted of a No Early Release Act offense, N.J.S.A. 2C:39-5(j).

On June 10, 2021, defendant moved to suppress evidence seized during the warrantless search of his vehicle. Judge Regina Caulfield conducted a suppression hearing on September 21 and November 15, 2021. The State called one witness, Linden Police Department (LPD) Officer Joshua Sheehy.

Judge Caulfield issued an order and cogent eighteen-page written decision denying defendant's motion to suppress. Thereafter, defendant pleaded guilty to second-degree unlawful possession of a weapon and was sentenced in accordance with the plea agreement to five years with a forty-two-month period of parole ineligibility. The judge dismissed all other charges.

Defendant appeals, arguing in a single point:

I.  THE TRIAL COURT ERRED IN DETERMINING
THAT THE OFFICERS HAD PROBABLE CAUSE
TO SEARCH THE CAR.

I.

The salient facts established at the suppression hearing are as follows.  On January 30, 2021, LPD Officers Michael Mutz and Sheehy were on patrol in an unmarked vehicle when they observed a vehicle traveling "at a high rate of speed."  Mutz paced the vehicle and determined it was traveling at approximately seventy miles per hour in a forty-five-mile-per-hour zone. Sheehy observed the license plate was from Georgia and, upon running the registration, learned the vehicle was registered to "EAN Holdings," which Sheehy knew to be a rental company.

Mutz activated the patrol vehicle overhead lights and sirens—which activated the officers' body cameras—and effectuated a motor vehicle stop. Mutz, as the lead officer at the stop, approached the driver side, and Sheehy approached the passenger side.  Mutz initiated communication with defendant who began "using sign language and one-word phrases" to communicate with the officers, relaying the words "wife, emergency, pregnant," and "hospital." Sheehy retrieved a notepad and joined Mutz near the driver's side window to better communicate with defendant.  Sheehy requested that defendant write

down his name and date of birth. Defendant wrote on the notepad "Thomas Jerot . . . 4-9-98" and communicated his identification was at a hotel. The name yielded "no results" from the police database system, INFOCOP.

Defendant, upon further inquiry, informed Sheehy he had a Pennsylvania driver's license, but a follow-up search through INFOCOP and Central Dispatch again found no match. Sheehy's body camera recording was at times muted during the stop, as he muted his camera to conference with the other officers and when contacting Central Dispatch. He did not always unmute the recording.

When Sheehy reapproached the vehicle, defendant was on the phone with his wife. She subsequently informed the officers that defendant was going to the hospital to meet her because she was possibly suffering a miscarriage. She then offered to go to the stop to "clear up any issues." Sheehy believed that "[s]omething just wasn't right with that" assertion.

At some point thereafter, multiple officers, including John Condora and Michael Rizzo, arrived at the scene. Defendant's wife arrived at the stop shortly after the other officers. Sheehy called an ambulance for her medical needs, but she refused medical assistance.

Rizzo assumed lead of the communications with defendant. Approximately forty-five minutes after the initial stop, Rizzo requested defendant exit the vehicle and step toward the rear trunk area. Sheehy, who was

A-2994-21

wearing "a felt-lined . . . ski mask type face covering," and was approximately two feet from defendant as he opened the door, "got a smell of marijuana coming from the interior of the vehicle" and from defendant's body. He made eye contact with Mutz to communicate that he smelled marijuana. When asked, defendant denied smoking marijuana that day. Sheehy believed he smelled raw marijuana. Rizzo advised defendant he and the vehicle were going to be searched. Defendant "spontaneously uttered that he was lying about his name," and revealed his name was Mantwan Thomas, which was confirmed through the Central Dispatch.

Rizzo searched defendant's person and uncovered "a cylindrical marijuana grinder" containing marijuana residue, "a large sum of money," and multiple sets of keys. Rizzo indicated he could smell the marijuana. Rizzo relayed to the officers to search the entire vehicle because he believed there was probable cause additional contraband was present. Mutz thereafter searched the front driver's area of the vehicle, while Rizzo searched the front passenger area. Both officers indicated they smelled marijuana inside the vehicle. Rizzo discovered a black backpack containing an unlabeled prescription bottle that contained "seven-and-a-half white bars" stamped Xanax and approximately

eight Suboxone strips.[1]  Mutz uncovered a New Jersey I.D. for defendant, as well as $7,000 worth of suspected counterfeit $100 bills, wrapped with a note that read, "[s]ee what you can get me for this much."

Shortly after the items were recovered from the interior of the vehicle, Condora conducted a search of the trunk and uncovered a black and blue backpack, which contained a dismantled "22 [s]hort revolver" and "approximately 100 22-caliber rounds."  Defendant was arrested and officers transported him to headquarters where it was learned he could speak English.

## II.

The standard of review on a motion to suppress is deferential, and we must "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 243 (2007)).  We are bound to defer "to those findings in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid.  (quoting Elders, 192 N.J. at

---

[1]  Suboxone, generically known as Buprenorphine or Naloxone, "is a combination of medications administered for the treatment of opiate agonist dependence."  Merck  Manual:  Professional  Version, https://www.merckmanuals.com/professional/Search Results?query=suboxone+zubsolv&species= (last visited Oct. 25, 2023).

A-2994-21

244).  Therefore, we only reverse a decision when the trial court's determination is "so clearly mistaken 'that the interests of justice demand intervention and correction.'"  State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)).  A trial court's interpretation of the law and the consequences that flow from established facts are not entitled to any special deference.  State v. Gandhi, 201 N.J. 161, 176 (2010).  Thus, a trial court's legal conclusions are reviewed de novo.  Ibid.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures."  State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Nyema, 249 N.J. 509, 527 (2022)).  "Warrantless seizures are presumptively invalid as contrary to the United States and the New Jersey Constitutions."  State v. Pineiro, 181 N.J. 13, 19 (2004).  To overcome the presumption of an unreasonable search and seizure, the State must demonstrate by a "preponderance of the evidence that an exception to the warrant requirement applies."  State v. Manning, 240 N.J. 308, 329 (2020).  "To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement.'"  State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023) (quoting State v.

Chisum, 236 N.J. 530, 546 (2019)). Each exception to the warrant requirement has their own essential elements that must be satisfied to justify a warrantless search. State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023).

"In assessing whether probable cause exists, 'courts must look to the totality of the circumstances and view those circumstances . . . from the standpoint of an objectively reasonable police officer.'" State v. Diaz, 470 N.J. Super. 495, 529 (App. Div. 2022) (quoting State v. Gibson, 218 N.J. 277, 293 (2014)). "[C]ourts are to give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

A.

Our Supreme Court has long recognized "under our State Constitution, 'when the police have probable cause to believe that [a] vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous,' law enforcement may search the vehicle without first obtaining a warrant." State v. Cohen, 254 N.J. 308, 319-20 (2023) (alteration in original) (quoting State v. Witt, 223 N.J. 409, 447 (2014)). Under the automobile exception, a police officer may conduct a warrantless search of a motor vehicle during a lawful roadside stop "in situations

where: (1) the police have probable cause to believe the vehicle contains evidence of a criminal offense; and (2) the circumstances giving rise to probable cause are unforeseeable and spontaneous." State v. Rodriguez, 459 N.J. Super. 13, 22 (App. Div. 2019) (citing Witt, 223 N.J. at 447-48). In Cohen, the Supreme Court held that "[p]ursuant to the automobile exception, if an officer has probable cause to search the interior of the vehicle, that probable cause encompasses the entirety of the interior." 254 N.J. at 327.

At the time defendant's motor vehicle was stopped on January 30, 2021, "New Jersey courts . . . recognized that the smell of marijuana itself constitute[d] probable cause 'that a criminal offense had been committed and that additional contraband might be present.'" State v. Walker, 213 N.J. 281, 290 (2013). Specifically, "an odor of unburned marijuana create[d] an inference that marijuana [was] physically present in the vehicle," and "the suspected marijuana could reasonably have been located in the passenger compartment and/or on the person of the occupants of the vehicle." State v. Judge, 275 N.J. Super. 194, 201 (App. Div. 1994).[2]

---

[2] On February 22, 2021, the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 to -56, came into effect, stating, "the odor of cannabis or burnt cannabis" cannot "constitute reasonable articulable suspicion of a crime." N.J.S.A. 2C:35-10c(a).

Judge Caulfield found Sheehy was a credible witness because "[h]e was calm [and] clear," "largely consistent," "maintained good eye contact with counsel," and "answered each question posed to him without adding unsolicited information." The judge credited Sheehy's "relevant training and experience" in investigating controlled dangerous substances. Sheehy described the smell of raw marijuana as "almost like a smell of . . . skunk, when a skunk sprays" and stated it is "a very distinct smell." Sheehy further testified "there was no doubt in [his] mind" that what he smelled was raw marijuana.

Based on Sheehy's credible testimony, the judge found sufficient evidence existed to support the search of defendant's person because the smell of marijuana "emanating from defendant's person provided the investigating officers with probable cause to search his person."

Judge Caulfield reasoned that there was probable cause to search the interior compartment because, in addition to the smell of marijuana on defendant, he had: committed a motor vehicle violation by speeding; provided limited verbal responses and communicated through sign language; provided no credentials, and the name he gave was not found in the police database; alleged his wife was having a miscarriage but she responded to the stop and then declined medical care; provided further misidentification information which

yielded no results; responded that he had not smoked marijuana that day when questioned; and had a marijuana grinder on his person.

Defendant's argument that the officers did not meaningfully distinguish between the smell emanating from defendant's person and a smell originating from the vehicle, because the marijuana grinder was found on defendant's person, is unavailing. After defendant's evasive conduct, Sheehy smelled marijuana emanating from both the vehicle and defendant's person. The judge found Sheehy credibly testified he smelled raw marijuana. Sheehy found it relevant that defendant had not provided his identification and was driving in a suspected rental vehicle from Georgia. It was objectively reasonable based on the evidence for the officers to determine probable cause existed. The judge's factual findings, based on Sheehy's testimony and the corroborating body camera footage, substantiated sufficient credible evidence to support probable cause. Defendant's contention that "[t]he likely source of the odor of marijuana coming from Thomas was the marijuana grinder found on his person" ignores the totality of circumstances the officers confronted. See Judge 275 N.J. Super. at 197, 202 (finding probable cause to search a vehicle despite the searching officer having found drug paraphernalia on the vehicle's occupants' persons).

B.

11

Our Supreme Court has further recognized that permissive warrantless searches "that extended to the trunk or other areas beyond the passenger compartment have involved facts indicating something more than simply detecting the smell of marijuana from the interior of the car."  Cohen, 254 N.J. at 324.  Where an officer has "probable cause to believe that [a] vehicle is carrying contraband . . . the search must be reasonable in scope."  State v. Patino, 83 N.J. 1, 10 (1980).  "[T]he bare circumstance of a small amount of marijuana does not constitute a self-evident proposition that more marijuana or other contraband might be elsewhere in [an] automobile."  Id. at 12.

"The scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that it may be found."  State v. Esteves, 93 N.J. 498, 508 (1983).  Probable cause should not be viewed as "a technical concept but one having to do with 'the factual and practical considerations of everyday life' on which reasonable and prudent persons act."  Patino, 83 N.J. at 10 (citing Brinegar v. United States, 338 U.S. 160, 175 (1949)).

Our Supreme Court has further recognized a distinction exists between "generally detecting [a] smell of a prohibited substance and detecting a smell of the substance of such a magnitude as to immediately suggest to officers that vast quantities of the substance were present" which coupled with other observations

A-2994-21

lends to probable cause.  Cohen, 254 N.J. at 327.  Additional factors that may support probable cause include the commission of a motor vehicle violation, failure to provide proper credentials, the defendant's demeanor and actions taken during a motor vehicle stop, and other surrounding suspicious circumstances. See State v. Wilson, 178 N.J. 7, 15-16 (2003).

Judge Caulfield's finding of a permissive warrantless search of defendant's vehicle's trunk under the automobile exception is also supported by sufficient credible evidence in the record.  She correctly recognized that "where there is no basis to believe that an odor of marijuana is emanating from the trunk, probable cause to search that area must be based on the existence of other incriminating factors."  The judge considered the totality of the circumstances and found because additional suspicious contraband was discovered during the search of the interior of the vehicle, the officers had probable cause to believe further evidence of criminality would be found in the trunk.

Defendant's argument that there was insufficient probable cause to search the trunk based on defendant's providing "untruthful" credentials, "the unremarkable amount of money," and "used marijuana grinder," is misplaced because it ignores the other credible evidence.  Specifically, the judge found the following additional evidence sufficiently supported probable cause:  $7,000 in suspected counterfeit $100 bills wrapped with a note stating "[s]ee what you can

get me for this much," that was located in the driver's side of the vehicle; and the label-less prescription bottle with "seven-and-a-half white bars" stamped Xanax and approximately eight Suboxone strips, which were suspected CDS located in the passenger compartment. Additionally, the officers found an I.D. with defendant's name in the vehicle. This evidence objectively provided officers sufficient probable cause to search the trunk. We conclude Judge Caulfield's finding that under the "totality of circumstances . . . there was probable cause to believe that additional evidence of a crime would be found in the trunk" was supported by sufficient credible evidence.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-2994-21