**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0493-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JUSTIN I. QUILES,

    Defendant-Appellant.

_____

Submitted March 9, 2026 – Decided March 30, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-08-0642.

Evan F. Nappen Attorney at Law PC, attorneys for appellant (Louis P. Nappen, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Justin I. Quiles appeals from the trial court's denial of his motion to suppress the seizure of weapons and ammunition by law enforcement following a stop and warrantless search of his motor vehicle. Based on our review of the record and application of the pertinent legal principles, we affirm.

I.

On January 26, 2022, Elizabeth Police Department Officers Kellen Moran and Jamie Ferreira were patrolling the area of Walnut and Mary Street in Elizabeth; an area described by officers as being known for high violent crime and narcotics activity. While on patrol, they observed a gray Jeep Cherokee with Pennsylvania plates double-parked on Walnut Street, impeding the flow of traffic and causing other vehicles to drive around the vehicle into oncoming traffic lanes. The officers conducted a motor vehicle stop and identified the occupants. Defendant was driving the vehicle, and Josh Everett was in the passenger front seat.

Officer Ferreira approached the driver's side of the vehicle, and Officer Moran approached the passenger side. Officer Ferreira requested defendant's license, registration, and insurance; but defendant, appearing very nervous, was unable to produce the requested items and instead handed over the vehicle's manual. When Officer Ferreira followed up, defendant allegedly remained

2

confused and ultimately was asked to exit the vehicle. As this occurred, Officer Moran observed Everett making a bending movement toward the front passenger floorboard, which Everett told officers was to search for his phone. The officers then removed both occupants from the vehicle.

After defendant exited the vehicle, Officer Ferreira testified he used his flashlight to illuminate the area around the driver's side door and observed an "extended magazine" in the door pocket. While this was happening, Everett broke free and attempted to escape but was chased and apprehended by Officer Moran. Officer Moran performed a pat down of Everett and recovered a handgun from his right coat pocket.

Subsequently, the officers searched the Jeep and recovered the extended magazine Officer Ferreira had seen, a fully loaded Glock 45 handgun from under the driver's seat with two additional magazines, an extended magazine from the passenger door, a loaded Springfield XD-M handgun from the glovebox, and a loaded assault rifle in a case with defendant's name in the rear storage area of the passenger compartment of defendant's Jeep.

In August 2022, a grand jury returned an indictment charging defendant with second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f) (count one); two counts of second-degree unlawful possession of a handgun,

3

N.J.S.A. 2C:39-5(b)(1) (counts two and three); two counts of fourth-degree possession of large capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (counts seven and eight); and fourth-degree possession of hollow point ammunition, N.J.S.A. 2C:39-3(f)(1) (count ten).

Defendant moved to suppress the physical evidence seized, arguing the stop, search and seizure were unconstitutional warrantless searches. Additionally, defendant filed a letter with court services and the prosecutor's office requesting admission into the Pretrial Intervention ("PTI") Program, outlining "compelling reasons" for acceptance, including lack of criminal history, responsibilities as a caretaker, educational ambition, character references and inadvertent violation of New Jersey gun laws.

A suppression hearing was held before the court in March 2024. At the hearing, Officer Moran testified, detailing the officers' observations during the stop and the subsequent search. Additionally, the video footage from the officers' body-worn camera was submitted.

On May 14, 2024, the trial court issued a written opinion and order denying defendant's suppression motion. The court found the stop was justified based on a violation of N.J.S.A. 39:4-67 due to the Jeep's double-parking and impediment of traffic. The court also found the officers lawfully ordered

4

defendant out of the car based on the principles set forth in <u>Pennsylvania v. Mimms</u>, 434 U.S. 106 (1977) and <u>State v. Smith</u>, 134 N.J. 599 (1994), and because of his failure to produce documentation.

As for the warrantless search of the vehicle, the court determined that the officers' observation of the extended magazine in plain view established probable cause under the automobile exception, which arose spontaneously and unforeseeably during a lawful stop. The trial court also found that the scope of the search was constitutionally permissible, and all items seized were admissible.

On July 1, 2024, defendant entered a negotiated guilty plea on count one for second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f), in exchange for dismissal of all other counts. The State agreed to recommend a three-year sentence, with one-year parole ineligibility. On September 6, 2024, the court sentenced defendant below the recommended plea to a term of three years' probation, 100 days in the county jail, and applicable fines and penalties.

Defendant appeals from the trial court's order denying his suppression motion and also challenges the validity of his convictions, contending:

POINT I

WHETHER THE COURT BELOW ERRED BY DENYING THE SUPPRESSION OF EVIDENCE.

POINT II

WHETHER THIS MATTER SHOULD BE STAYED PENDING DETERMINATION(S) REGARDING THE CONSTITUTIONALITY OF THE UNDERLYING STATUTE.

POINT III

WHETHER THE PRACTICE OF NOT ALLOWING PTI APPLICATIONS TO PROCESS WITHOUT PRIOR STATE APPROVAL FOR ILLEGAL FIREARM POSSESSION OFFENSES SHOULD BE STRUCK AS A FUNDAMENTAL UNFAIR DENIAL OF DUE PROCESS AND AN ABUSE OF DISCRETION.

II.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We "defer[] to those findings in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Nyema, 249 N.J. 509,

6

526 (2022) (quoting Elders, 192 N.J. at 244); see also State v. Smart, 253 N.J. 156, 164 (2023).  Accordingly, "[w]e will set aside a trial court's findings of fact only when such findings 'are clearly mistaken.'"  State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)).  "We accord no deference, however, to a trial court's interpretation of law, which we review de novo."  Ibid.

Defendant contends the court erred in denying his suppression motion asserting:  (1) the scope of the traffic stop should have been confined to examining defendant's documentation and issuing a ticket for the violation; (2) the officers unconstitutionally removed defendant and Everett from the vehicle; (3) the trial court erred in finding that the officers saw the extended magazine in "plain view"; (4) the search of the vehicle itself was unconstitutional; and (5) the officers could not have determined that the magazine they observed was contraband.  Defendant argues that the combination of the alleged constitutional violations prevent admission of any of the discovered evidence, as it is all "fruit of the poisonous tree."  We are not persuaded by any of defendant's arguments.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures."  Smart, 253 N.J. at 164

(quoting Nyema, 249 N.J. at 527). Warrantless "searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting Elders, 192 N.J. at 246). To overcome the presumption of an unreasonable search and seizure, the State must demonstrate by a "preponderance of the evidence that an exception to the warrant requirement applies." State v. Manning, 240 N.J. 308, 329 (2020).

As a threshold matter, a police officer is justified in stopping a vehicle where the officer suspects the driver committed a motor vehicle violation. State v. Locurto, 157 N.J. 463, 470 (1999) (citing State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997)). In Delaware v. Prouse, the United States Supreme Court held that police may stop a vehicle only if they have a reasonable and articulable suspicion that a motor vehicle offense has been committed. 440 U.S. 648, 663 (1979). In State v. Bacome, the New Jersey Supreme Court reaffirmed that "[t]o be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40 (2002)).

On appeal, defendant does not directly challenge the lawfulness of the traffic stop; rather, he contends the stop should have been limited to the scope of the traffic violation and defendant should have simply been issued a motor vehicle ticket. We determine defendant's argument lacks merit because it ignores the fact that defendant failed to comply with the officer's requests to provide identification, registration and insurance as permitted by the valid stop of his vehicle for a traffic violation. Defendant also alludes to racial animus as the reason for the stop. We find no merit to this assertion because not only does defendant provide no evidence supporting this contention besides defendant's race, but he also failed to challenge the basis of the stop being a traffic violation, which is nondiscriminatory in nature.

We next turn to defendant's contention that the officers' directive for defendant and his passenger to exit the vehicle was inappropriate and all evidence seized thereafter should have been suppressed. Defendant contends the trial court erred in not finding the removal of defendant and his passenger "constituted an extension beyond the scope of the purpose of the stop and, thereby, was unlawful."

Following a lawful traffic stop, an officer may require a driver to exit the vehicle, Mimms, 434 U.S. at 111. "If, during the course of the stop or as a result

9

A-0493-24

of the reasonable inquiries initiated by the officer, the circumstances give rise to" reasonable, articulable suspicion that the motorist is involved in criminal or unlaw activity, the officer may broaden the inquiry of the detention. State v. Bernokeits, 423 N.J. Super. 365, 371 (App. Div. 2011) (quoting State v. Dickey, 152 N.J. 468, 479-80 (1998)) (internal quotations omitted).

To determine whether reasonable suspicion existed, a judge must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019) (quoting State v. Stovall, 170 N.J. 346, 361 (2002)). Courts should give weight to "'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

Our case law is clear that an officer may order the removal of an operator of a vehicle who refuses or is unable to provide proof of ownership in order to search for proof of ownership. State v. Johnson, 476 N.J. Super. 1, 21-22 (App. Div. 2023) (citing State v. Terry, 232 N.J. 218, 222 (2018)). In the context of a registration search, the exception is "predicated on the principle that a police officer has the lawful right to request that a driver, stopped for a motor vehicle

violation, provide proof of ownership." Id. at 21. This is due to "the State's 'compelling interest in maintaining highway safety by ensuring that only qualified drivers operate motor vehicles and that motor vehicles are in a safe condition.'" Id. at 22 (quoting Terry, 232 N.J. at 233).

Defendant failed to provide proper identification or proof of ownership of the vehicle upon request, instead handing Officer Moran the vehicle's instruction manual. Additionally, Officer Moran observed defendant as nervous and confused, a factual determination made by the trial court, which is entitled to our deference based on the trial court's observation of Officer Moran's testimony and other evidence adduced at the hearing. Also, Everett made a furtive movement towards the floor, another factual determination by the trial court gleaned from Officer Moran's testimony that is entitled to our deference. Due to defendant's failure to provide proof of ownership or identification and Everett's furtive movement, we conclude the trial court did not err in finding the removal of defendant was proper and the evidence seized thereafter was appropriate.

We next address defendant's challenges to the officers' seizure of the weapons and ammunition in the vehicle. We conclude defendant's contention that the extended magazine seized from the driver side door panel was not

11

justified under the plain view exception to be without sufficient merit to warrant discussion in a written opinion and we affirm for the reasons set forth by the trial court.  R. 2:11-3(e)(2).  We add only that the record reflects the trial court credited Officer Ferreria's testimony that he "clearly saw the extended magazine in the plain view from the outside of the vehicle" to find probable cause existed, which is entitled to our deference.

We now address defendant's contention that the warrantless search of the remainder of the vehicle was improper and the court should have suppressed all remaining evidence seized.  As we noted, the search disclosed a fully loaded Glock 45 handgun under the driver's seat with two additional magazines, a loaded Springfield XD-M handgun from the glovebox and a loaded assault rifle in a suitcase with defendant's name on it in the rear storage area of the passenger compartment of his Jeep.

"To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement.'"  State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023) (alteration in original) (quoting State v. Chisum, 236 N.J. 530, 546 (2019)).

Each exception to the warrant requirement has their own essential elements that must be satisfied to justify a warrantless search. Johnson, 476 N.J. Super. at 20.

In support of the validity of the search, the State relies on the automobile exception to the warrant requirement. The controlling precedent construing the automobile exception under our State Constitution is State v. Witt, 223 N.J. 409, 447-50 (2015). The Court instructed in Witt that any "searches on the roadway based on probable cause arising from unforeseeable and spontaneous circumstances are permissible." 223 N.J. at 450. The circumstances giving rise to probable cause must not exist "well in advance of" the search. Smart, 253 N.J. at 174. The automobile exception is limited "to on-scene warrantless searches." State v. Fennimore, 261 N.J. 364, 375 (2025) (quoting Witt, 223 N.J. at 449).

The record supports the officers were not acting on any previous information or tip but were addressing the spontaneous motor vehicle stop of defendant's vehicle based on a traffic violation. We note, after the removal of the occupants, the extended magazine was discovered in plain view and Everett attempted to flee. Moreover, after Everett was apprehended, a search of his person revealed he possessed a firearm. We conclude these circumstances— namely the discovery of the extended magazine in plain view and Everett's

13

attempted flight that uncovered his possession of a firearm—clearly gave rise to the probable cause necessary for the "on the scene" search of the remainder of the vehicle without a warrant under the automobile exception.

We further conclude, based on the record, that the scope and extent of the search was lawful. As a general principle, "[t]he scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that it may be found." State v. Esteves, 93 N.J. 498, 508 (1983). Depending on the facts, those places may include containers within a motor vehicle, as it has long been recognized that the automobile exception extends to containers in the vehicle that could be concealing the object of the search. See State v. Wilson, 478 N.J. Super. 564, 578-79 (2024) (quoting United States v. Ross, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search")); see also State v. Patino, 83 N.J. 1, 10-11 (1980) (disallowing a warrantless search of a vehicle's trunk under the distinctive facts presented).

The constitutional analysis regarding scope hinges upon "the object of the search" as to which there is probable cause. Wilson, 478 N.J. Super. at 572. Notably, in State v. Cohen the Court determined:

A-0493-24

This holding in no way suggests that areas within the interior of the car would require separate probable cause findings in order to conduct a warrantless search. We are not dividing up the interior of vehicles such that an officer would need to establish different or additional probable cause to search the front seat as opposed to the back seat, for example. Pursuant to the automobile exception, if an officer has probable cause to search the interior of the vehicle, that probable cause encompasses the entirety of the interior.

We are also not suggesting that the warrantless search of a trunk or engine compartment will always require separate probable cause findings. Instead, we reiterate that a warrantless search of a car "must be reasonable in scope" and "strictly tied to and justified by the circumstances which rendered its initiation permissible."

[254 N.J. 308, 327-28 (2023) (emphasis added) (quoting Patino, 83 N.J. at 10-11).]

The hearing record clearly exhibits the officers had probable cause to believe the vehicle contained firearms based on the magazine inside the vehicle that was in plain view and the weapon found on Everett. The search of the entirety of the passenger compartment, including the back storage area of the vehicle and the case wherein the rifle was contained, fits squarely within the holding of Cohen as illegal weapons were the "object of the search." Therefore, the trial court's determination that the officers conducted a valid warrantless search under the automobile exception was not error.

15

III.

We now address defendant's remaining points first raised on appeal concerning: (1) his request to stay the matter until a determination is made by our courts concerning the constitutionality of N.J.S.A. 2C:39-3(j); and (2) his assertion that the "government's practice of not allowing PTI applications to process without prior state approval" is a violation of due process and an abuse of discretion.

"Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012). "For sound jurisprudential reasons, with few exceptions, '[we] decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" Witt, 223 N.J. at 419 (quoting State v. Robinson, 200 N.J. 1, 20 (2009)) (additional internal quotation marks omitted).

Appellate courts do not "consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem.

16

Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

Defendants failed to raise these arguments either during defendant's suppression motion or at his guilty plea hearing. The record lacks evidence defendants sought a stay from the trial court. Rule 2:9-5(b) mandates the stay application first be made to the trial court before such relief is sought from us and therefore, we decline to consider defendant's stay request.

Defendant raised the alleged unfairness of the PTI process in his PTI "application" letter, but this issue was not substantively decided by any orders on appeal, because defendant entered a guilty plea before a determination was rendered on his PTI "application" rendering this issue moot below. Also, defendant has not provided reasons as to why he failed to inquire about his PTI application prior to entering a guilty plea or proofs that he reserved his appeal rights concerning the PTI application.

Because we conclude defendant's arguments do not involve issues regarding jurisdiction and are not matters of great public importance, they do not warrant departure from the general rule not to consider arguments made for the first time on appeal. Therefore, we decline to consider defendant's request for a stay or his due process challenges surrounding the PTI procedures.

17

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0493-24