STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
STEVEN ALSTON, DEFENDANT-APPELLANT.

Reargued September 23, 1975—Decided April 13, 1976.

*Ms. Barbara R. Lependorf,* designated attorney, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Ms. Lependorf,* of counsel and on the brief).

*Mr. Dante P. Mongiardo,* Assistant Passaic County Prosecutor, argued the cause for plaintiff-respondent (*Mr. Burrell Ives Humphreys,* Passaic County Prosecutor, attorney; *Mr. Mongiardo,* of counsel and on the brief).

The opinion of the Court was delivered by

HUGHES, C. J. This appeal involves the same basic question decided this day in *State v. Deatore,* 70 *N. J.* 100 (1976), *i. e.,* the propriety of bringing out on cross-examination of a defendant, who testifies at trial to an exculpatory story, that he had not told that story, but had remained silent, at or near the time of his arrest, such line of questioning seeking to create the inference that the exculpatory testimony was untrue.

The defendant Alston was convicted, along with Oliver Hines, of breaking and entering a dwelling in Paterson and larceny of a revolver and cash therefrom. A third participant was never identified or apprehended and was indicted as "John Doe." Hines did not appeal. Defendant's sole ground of appeal was the allowance of cross-examination along the lines outlined above. The majority of the Appellate Division affirmed the conviction, holding the questioning proper under *State v. Burt,* 107 *N. J. Super.* 390 (App. Div. 1969), *aff'd* o.b., 59 *N. J.* 156 (1971), *cert.* den., 404 *U. S.* 1047, 92 *S. Ct.* 728, 30 *L. Ed.* 2d 735 (1972), in the light of the lack of proof that defendant had been given *Miranda* warnings following his arrest. The concurring judge questioned the applicability of *Burt,* but felt that any trial error in this respect was harmless beyond a reasonable doubt.

We granted defendant's petition for certification, 64 *N. J.* 309 (1973), and the case was argued with *Deatore*.[1]

The question involved arose in this testimonial setting. Neighbors saw three men approach the front door of a house whose occupants they knew to be at work. When the bell was not answered, they attempted to force the door. That effort proving unsuccessful, they were seen to go to the rear of the house (where a break-in was later discovered) and a few minutes later to return to the front and hurriedly leave the vicinity. The neighbors called the police, who responded promptly, and gave a description of the men based on general appearance and kind and color of outer clothing worn.

The police testimony was that three men answering the general description were seen walking along a street in the area. One fled immediately on sight of the police and was never located (he was "John Doe"). The other two, the defendant and Hines, also ran as an officer approached and were captured after a considerable chase through residential backyards. They were taken back to the scene of the crime and identified by the neighbors. (The admissibility of the identification was established by a *Wade*[2] hearing at the trial.) None of the loot was discovered on a search of their persons. The revolver was later found discarded some distance away.

Defendant took the stand as his only witness and gave a version of his capture quite different from that testified to by the police officers. He said he was walking alone through this residential area en route from his brother's home in a housing project, where he had visited, to his sister's home in another part of the city. A police car came

---

[1]Defendant was sentenced to an indeterminate reformatory term concurrent with a sentence then being served by reason of violation of probation with respect to an earlier offense. He was released on parole some time ago.

[2]*United States v. Wade*, 388 *U. S.* 218, 87 *S. Ct.* 1926, 18 *L. Ed.* 2d 1149 (1967).

up to him and the officer said he was under arrest, where-upon he fled because, he stated, he knew he was wanted for violation.of probation imposed on a previous conviction for atrocious assault and battery. He denied knowing Hines or being at the robbed house. (Hines did not testify.) On cross-examination, he was asked: "You didn't say this to the police officers when you were caught did you?" Defense counsel moved for a mistrial on the ground that the privilege against self-incrimination was thereby violated: "He never has to say anything to anyone." The trial court agreed with this statement but, after extensive argument outside the presence of the jury, held the line of questioning proper on the authority of *Burt*. The prosecutor then asked: "Why didn't you tell the police officer at the time where you were and where you were going?", to which defendant replied: "They didn't ask me."

The whole incident occupied only a few lines, as far as the jury was concerned, in the transcript of a trial lasting more than three days and the subject matter was not referred to thereafter in summation or in any other way.

While under the rule settled today by our opinion in *Deatore,* the above recited questions were improper, we agree with the concurring judge below that the error was harmless beyond a reasonable doubt and cannot be said to have in-fluenced the verdict. We reach this conclusion for three reasons. First, the questioning was extremely limited and was never again referred to during trial; second, any im-pression it may have left with the jury was rendered in-nocuous by the defendant's response, and finally, the proof of guilt was very strong.

The judgment of the Appellate Division is affirmed.

PASHMAN, J. (dissenting). In this case, the majority concludes under its holding in *State v. Deatore,* 70 *N. J.* 100 (1976), also decided today, that it was error for the prosecutor to cross-examine the defendant as to his silence and failure to disclose exculpatory information to the police

at the time of his arrest. Notwithstanding the impropriety of these questions, the majority affirms Alston's conviction on the ground that this error was harmless beyond a reasonable doubt. *Ante* at 98.

My views on these issues are set out in my separate opinion in *State v. Deatore, supra.* There I dissociated myself from any efforts on the part of the majority to erode the principles of *Miranda v. Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966) and subvert the constitutional guarantee against self-incrimination. Because the actions of the prosecutor in this case infringed upon those principles and guarantees (as the majority readily admits), and because counsel for defendant vigorously objected that these questions violated his client's right against self-incrimination, *cf. State v. Macon,* 57 *N. J.* 325, 333–34 (1971), I would reverse and remand for a new trial free from such prosecutorial indiscretion. Only through such judicial sanctions can the rights of this criminal defendant be vindicated.

In short, I reemphasize that where a defendant relates an exculpatory story at his trial, counsel for the State may not question defendant as to his silence or his failure to volunteer information at or near the time of his arrest.

SULLIVAN and SCHREIBER, JJ., concurring in the result.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge CONFORD—6.

*For reversal and remandment*—Justice PASHMAN—1.