151 N.J. Super. 300 (1977)
376 A.2d 1255
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES THOMAS MURRAY, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT LEITE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1977.
Decided June 29, 1977.
*303 Before Judges BISCHOFF, MORGAN and KING.
Mr. Frank M. Ciuffani argued the cause for appellant Charles Thomas Murray (Messrs. Wilentz, Goldman & Spitzer, attorneys; Messrs. Frank M. Ciuffani and John L. Schantz, of counsel and on the brief for appellants Murray and Leite).
No one appeared on behalf of appellant Robert Leite.
Mr. Barry T. Albin, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Convicted by a jury of possession of a controlled dangerous substance (hashish) and possession with intent to distribute it, defendants appeal, contending that the trial judge erroneously denied their pretrial motion to suppress evidence of the hashish allegedly obtained as the result of an illegal search; that the State improperly inquired into defendants' failure to volunteer the information at the time of the arrest that one of them gave in his trial testimony, and that the prosecutor's incorrect statement of law contained in his summation insufficiently corrected by the trial court constituted error and cause for reversal and a new trial.
Testimony at the motion to suppress established that during the afternoon hours of April 25, 1975, on Route 22 in Warren County, New Jersey, Trooper Robert Hopkins stopped the white Dodge van in which defendants were travelling for several unspecified traffic violations. While Trooper Hopkins was on the passenger side of this vehicle obtaining the driver's credentials he observed a "roach clip" on the floor of the passenger's side of the van near the feet *304 of defendant Robert Leite, the passenger. He also observed in the vicinity of the center console area, between the driver's and passenger's seat near the dashboard area, an amber vial containing a "vegetative residue, dust, actually, all around the surface, inside surface of the vial as well as some in the bottom of it." The combination of the empty roach clip and this vial containing a residue of something caused the officer to be suspicious that perhaps marihuana or other narcotic substance was present.
Obtaining possession of the vial from defendant Leite, he opened it and on smelling it concluded that it contained marihuana. Looking closer at the interior of the vehicle he detected another amber vial just under the passenger's seat. Both vials seized by Trooper Hopkins were produced at the motion to suppress and observed by the trial judge to contain a dusty residue.
Trooper Hopkins admitted that when he first observed the first vial he was unable to identify its contents. All he could observe from his vantage point outside the vehicle was that the vial appeared to contain dust. It was not until he opened the vial and smelled it that his suspicions that it had contained marihuana were confirmed. He admitted that the amount of marihuana contained in the vial was minimal, not enough to make even one cigarette from the contents; in fact, the laboratory report was unable to quantify the amount contained in the vial, stating only that the vials were positive for traces of marihuana.
Following the recovery of these vials and confirmation of Hopkins' suspicion that they contained traces of marihuana, Hopkins ordered defendants out of the vehicle. Although they were not placed under arrest at the time, he did advise them of their constitutional rights, including the right to be silent. As the defendants were positioned outside of the van they were confined to an area precluding access to the van to either obtain a weapon or destroy any evidence. When an off-duty police officer arrived at the scene, the search of the vehicle ensued.
*305 Hopkins first examined the cab area of the van, including the area around the dashboard. Finding nothing he then proceeded to search the rear area of the van which he described as containing furniture and a number of boxes containing household goods. Most of these boxes were opened and searched; cushions on some of the furniture were also examined. No contraband was uncovered as the result of these efforts.
Encountering a sink set in a cabinet fully enclosed except for an opening adjacent to the rear of the driver's seat, Trooper Hopkins decided to search further. In order to gain access to this compartment under the sink it was necessary for him to remove the driver's seat from the van. The following excerpt from Hopkins' testimony describes what he did in this regard:
Q. What physically did you do to take the seat out?
A. As I said earlier, I recalled taking a pin or something there was holding the seat onto the brackets. I didn't have to use any tools. So, there wouldn't have been any bolts * * *.
Q. It was fastened in some way so that it could not be moved forward?
A. Yes.
Q. And you unfastened it and moved it forward?
A. Yes.
After removing the front seat from the van Hopkins was enabled to gain access to the compartment under the sink where he discovered a suspended frame holding a locked attache case. He removed the attache case; and when placing his nose against the opening, smelled hashish. Since he did not know the combination to the attache case, he used a knife to force the lock. Located in the attache case were almost five bricks of hashish valued at approximately $35,000.
After finding the hashish he placed defendants under arrest, again advised them of their constitutional rights and took them to State Police barracks. There a search of their person disclosed cash in the amount of $2,890 on defendant Murray, the driver of the van, and $51 on Leite.
*306 After hearing this testimony the trial judge denied defendants' motion to suppress, concluding that when Trooper Hopkins saw the empty roach clip and the first vial in plain view, he had probable cause to believe that the vehicle contained marihuana. He was therefore entitled to demand possession of the vial and, after confirming that it contained traces of marihuana from smelling it, he was justified in making the subsequent search of the vehicle.
The search conducted in this case plainly implicates the issue concerning its permissible scope, assuming that the warrantless search in its inception was justified on probable cause grounds. Defendants' contention that Hopkins' initial demand for the possession of the first perceived vial was unlawful and that everything that transpired thereafter was tainted thereby is without merit. In our view, the combination of the empty roach clip and the vial gave Hopkins reasonable cause to believe that the vial contained marihuana. He recalled the roach clip as being an instrument ordinarily used in consuming marihuana, and the coincidental perception of a container capable of containing small amounts of marihuana justified his suspicions. We therefore perceive nothing unreasonable in his demand for the vial. On opening, smelling and detecting the odor of marihuana, he was similarly justified in concluding that the van may have contained additional quantities of marihuana for the use of the van's occupants. We therefore have no difficulty in upholding the inception of the search as being reasonable in the given circumstances.
Difficulty, however, is encountered when we consider the scope of this search subsequently undertaken. Clearly on the facts apparent to Trooper Hopkins he was entitled to search the passenger portion of the vehicle for possible additional quantities of marihuana. We also accept as reasonable the trooper's entry into the rear portion of the van in his efforts to uncover what he suspected was present. To this point the scope of the search was in our view consistent with the facts justifying it. The trooper's further actions *307 in rummaging through the cartons in the rear containing an assortment of household goods cannot be similarly viewed as clearly justified. Were this all that was involved, however, we would not be inclined to invalidate the search. Arguable actions of an officer taken on the scene and made in good faith should not be subjected to intensive scrutiny by an appellate court in the exercise of hindsight for the purpose of invalidating what could to the officer present at the scene have been viewed as reasonable. We are convinced, however, that when the officer, unsuccessful to that point in uncovering additional contraband, commenced interfering with the structural integrity of the vehicle itself, the search he was conducting transcended all bounds of reasonableness. A search reasonable in its inception may nonetheless violate the Fourth Amendment by virtue of its intolerable intensity and scope. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Its scope and intensity must not be disproportionate to the circumstances giving rise to it. The notion that a search originally justified may be without limit is rejected.
The question of just how far a search may go without forfeiting its legality has not received much attention in the reported cases; it has not, however, gone entirely without mention. Hence in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), a case concerning the permissible scope of a warrantless search incidental to a lawful arrest, the court held that in order to retain reasonableness such a search cannot go beyond the person of defendant or the area within defendant's control from which he could possibly obtain a weapon or gain access to other evidence that could be used against him. The court found no justification for a thoroughgoing search of the dwelling in which a defendant had been arrested.
In Wimberly v. Superior Court, 16 Cal.3d 557, 128 Cal. Rptr. 641, 547 P.2d 417 (Sup. Ct. 1976), the court invalidated an entry into the trunk area of the vehicle involved, allegedly justified by the officer's plain view discovery *308 of marihuana seeds and a pipe on the floor of a car which had been stopped for reckless driving. That court rejected the view, advanced by the State, that once probable cause to search a vehicle is established, the permissible search automatically extends to the entire vehicle. According to that court the facts upon which the search is based must provide a reasonable basis to suspect that other portions of the vehicle contain contraband; without such justification entry into the trunk is to be viewed as unreasonable.
We neeed not go as far as the court in Wimberly since we are not required to consider whether, in the given circumstances, Trooper Hopkins' entry into the rear of the van was justified because no contraband was found there. We only conclude that where, as in the present case, the only basis for the search is an empty roach clip and a vial containing traces of marihuana, a search which interferes with the structural integrity of the vehicle itself is fatally excessive in its scope.
We do not wish to be understood as forbidding all entries into the trunk area of cars being searched on a warrantless basis. Clearly in many circumstances such entries are entirely reasonable. For example, in State v. McCarthy, 130 N.J. Super. 540 (App. Div. 1974), the police were given information by one having personal knowledge thereof that the trunk of the vehicle searched contained marihuana. In those circumstances the subsequent entry by the police into the trunk to locate and seize the marihuana was entirely justified. That case no more justifies all entries into the trunk of a vehicle than does this case forbid all such entries. Whether the trunk of the vehicle may properly be opened and searched depends entirely on the factual circumstances apparent to the searching officer.
In Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), relied upon by the State, the United States Supreme Court specifically upheld the search of a trunk where police officers were looking for a revolver as part of an inventory search of the vehicle. Defendant there *309 was known by the officers to be an out-of-state police officer who had been involved in a one-car accident and who had been arrested for drunken driving. The search of the vehicle which had been towed to a garage for safekeeping was upheld because the officers were specifically looking for the officer's gun in their legitimate "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." Id. at 447, 93 S.Ct. at 2531, 37 L.Ed.2d at 718. In short, the court approved the entry into the trunk because the officers reasonably believed it contained a gun.
In State v. Gray, 59 N.J. 563 (1971), entry into the trunk was justified by the officer's previous finding of decks of heroin in the passenger compartment of the car. It was further justified by the clearly suspicious actions of the occupants, the failure of the driver to produce credentials although given three or four minutes to do so, and by the well-founded suspicions of the officers derived from the fictitious nature of the vehicle's license plates that the vehicle was a stolen one. The factual circumstances giving rise to the present search in no way approaches the amount of suspicion justifiably engendered by the circumstances in Gray.
In State v. Waltz, 61 N.J. 83 (1972), also relied upon by the State, the search did not even approach the scope of the search conducted in the present case. Moreover, in Waltz the basis for the search was the discovery of several pills and vegetation contained in a closed bottle. The van was searched after the driver and passenger were placed under arrest, and the remainder of the contraband was discovered in the rear portion of the van after a third occupant was found smoking a pipe and having in his possession hashish and other bottles of pills. Unlike the present case, no attempt was made in Waltz to dismantle the vehicle in an attempt to search for contraband on the minimal evidence which was the alleged justification for the search in this case.
*310 In the present case we conclude that the search was unlawful in its scope and that the trial judge erred in failing to suppress its fruits.
Because of the nature of our disposition of this appeal it is unnecessary that we give more than cursory consideration to the remaining issues. We comment thereon for the guidance of the parties and the trial court in the event of a retrial.
The prosecutor made the following statement to the jury during the course of his summation:
Now, the State has to prove three things here. We have to prove possession. We have to prove it was a controlled dangerous substance; and we have to prove there was some intent to distribute. Now, as to the possession; it was in the van. As both defense counsel have indicated, once it is in the van, people who are in the van possess it. They possess it jointly.
The foregoing comment was objected to by defendant and no adequate correction thereof was made by the trial judge. The comment was clearly improper. First, it attributed to defense counsel a position they never adopted. Defense counsel never suggested that since the hashish was found in the van both the passenger and the driver must be deemed to have jointly possessed it. Second, the statement is erroneous as a matter of law. The mere fact that the hashish was in the van does not, without more, conclusively prove possession, as the prosecutor seems to suggest. Such essays on the law should be avoided in summations by both sides.
A prosecutor's question put to trooper Hopkins on his direct examination asked the trooper whether, at the scene, either defendant did "anything to aid your investigation." Defendant's objection was overruled by the judge. In our view the question was clearly an improper one. First, it suggested that the defendants were under an obligation to aid the arresting officer in his investigation. This is not so and the jury should not have been permitted to receive the impression that defendants failed to meet such a non-existent *311 obligation. Second, the question implicates the problem encountered in State v. Deatore, 70 N.J. 100 (1976), and State v. Alston, 70 N.J. 95 (1976), in that it suggested that part of defendants' cooperation which they were impliedly obligated to give included informing the officer of the truth of the matter at hand. Again, defendants were under no obligation whatsoever, and in fact they were so advised by the officer himself at the scene when he gave them the Miranda warnings. Questions such as this one should be avoided in any retrial of this matter.
At the scene defendant Leite disclaimed ownership of the attache case and its contents despite the Miranda warnings. He did not, however, tell the officer who the owner was. At trial, however, he testified, on direct, that the owner was one Anthony DeBenedetto who had loaded the truck and had apparently secreted the hashish in the hiding place under the sink. He also purported to explain to the jury why it was he had not given this information to the officer when he first was arrested. Notwithstanding, defendant contends that the State was precluded from inquiring of defendant on cross-examination as to why this information concerning the identity of the owner of the hashish was not given at the time of his arrest. The trial of this case, however, preceded rendition of the opinion in State v. Lyle, 73 N.J. 403 (1977). Lyle dealt with the issue raised here, the extent to which the State may make use of the failure of the defendant to volunteer the whole story when he undertakes to make part of it known to the police. In the event of a retrial of this matter, the trial judge will, of course, be guided by the holding in Lyle.
The prosecutor's questions concerning defendants' failure to advise the officer of the ownership of the van in question was clearly harmless because other evidence established that defendant Leite owned the van. In other circumstances, however, such an inquiry as to why a defendant did not give the police certain information at the scene of an arrest may run directly counter to Deatore, Alston and Lyle, *312 all supra. Such questions must be approached with full awareness of the hazards they contain and should only be asked on rare occasions when clearly justified by other circumstances.
Reversed and remanded for a new trial.