NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1365-23

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

TAVIAUS WILSON,
JAMES HOOKS, and
SADALE LOATMAN,

      Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

June 12, 2024

APPELLATE DIVISION

Submitted May 8, 2024 – Decided June 12, 2024

Before Judges Currier, Firko and Susswein.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 19-07-0670.

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for appellant (Stephen Christopher Sayer, Assistant Prosecutor, of counsel and on the brief).

Jennifer Nicole Sellitti, Public Defender, attorney for respondent James Hooks (Zachary Gilbert Markarian, Assistant Deputy Public Defender, of counsel and on the brief).

John P. Morris, attorney for respondent Sadale Loatman.

> Michael R. Mazzoni, PA, attorneys for respondent Taviaus Wilson, join in the briefs of respondents James Hooks and Sadale Loatman.

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

This case presents two questions of first impression under New Jersey law concerning the scope and intensity of searches conducted pursuant to the automobile exception to the warrant requirement. Are police permitted to search a glove box based solely on the odor of marijuana emanating generally from the passenger compartment of a vehicle without first determining whether the odor is coming specifically from the vicinity of the glove box?[1] And does the New Jersey automobile exception extend to a glove box that is intentionally locked, manifesting a heightened expectation of privacy in its contents as compared to the vehicle generally, to objects left out in the open, and to the contents of opaque containers in the vehicle that are closed but not locked?

---

[1] The stop in this case occurred in November 2018 when possession of marijuana was unlawful. The New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56, now precludes police from using the odor of marijuana to establish probable cause to search. See N.J.S.A. 2C:35-10(b)(1) ("[t]he odor of marijuana . . . shall not constitute reasonable articulable suspicion to initiate a search of a person to determine a violation. . . ."). CREAMMA took effect on February 22, 2021, and does not apply retroactively. State v. Cohen, 254 N.J. 308, 328 (2023).

By leave granted, the State appeals a December 5, 2023 Law Division order suppressing three loaded handguns and a large capacity ammunition magazine police found in defendant Taviaus Wilson's locked glove box during a traffic stop. In 2019, the trial court denied defendants' motion to suppress but reconsidered its ruling following our Supreme Court's decision in <u>Cohen</u>, 254 N.J. at 308.

The trial court reversed its initial decision and suppressed the guns and ammunition magazine, noting that Wilson and the other occupants—defendants James Hooks and Sadale Loatman, and a juvenile who is not a party to this appeal—did not have access to the locked glove box while the vehicle was in operation because the key that opened it was in the ignition switch. The trial court further reasoned defendants had a heightened expectation of privacy by "intentionally lock[ing]" the glove box. The police were therefore required to impound the vehicle and secure a warrant before searching the locked compartment.

Although the trial court rendered a thoughtful oral opinion, we conclude it misinterpreted the automobile-exception principles recently explained in <u>Cohen</u>. The smell of marijuana emanating from the passenger compartment provided probable cause to search the entire interior for marijuana, including the glove box, since that was a place within the passenger compartment where

marijuana could be concealed. While searching within the passenger compartment, the officers were not obliged to follow a scent trail and pinpoint the exact source of the odor before opening containers situated within that space.

Nor are we persuaded that locking the glove box manifested a heightened expectation of privacy comparable to that which applies to a home, taking that compartment outside the realm of the automobile exception. Throughout the long history of the automobile exception in New Jersey, police have been permitted to open trunks of vehicles—so long as the case-sensitive probable cause extends to that compartment—notwithstanding that historically, trunk lids were locked and had to be opened with a key. The locked status of a trunk, in other words, had no bearing on the scope of an automobile-exception search. Based on that history and tradition, we reject the novel proposition that motorists can unilaterally render containers in a vehicle immune from automobile-exception searches by locking them.

Nor does it matter whether the contents of the locked glove box were inaccessible to the vehicle occupants. Unlike the distinct search-incident-to-arrest exception, which limits the scope of a warrantless search to areas "within [the arrestees'] immediate control," see Chimel v. California, 395 U.S. 752, 763 (1969), under the automobile exception, the State need not establish that the contents of a built-in compartment or portable container are accessible to the

A-1365-23

occupants.  See State v. Witt, 223 N.J. 409, 428 (2015) (noting police may conduct an automobile-exception search after the occupants are arrested and secured in a police vehicle).

In sum, the warrantless search was lawfully initiated based on probable cause that arose spontaneously and unforeseeably during the traffic stop.  The manner in which the search was conducted was reasonable in its physical scope since police found the weapons within the passenger compartment in a container that could conceal the object of the search.  The search was also reasonable in its intensity given that police did not break open the glove box but instead used the ignition key to unlock it without causing any damage.  Accordingly, we reverse the order suppressing the weapons.

## I.

We discern the following pertinent facts and procedural history from the record.  On November 4, 2018, Detective Christopher Zanni of the Bridgeton City Police Department was on patrol in a marked patrol vehicle when a white SUV pulled out in front of him.  He observed the SUV's front driver and passenger side windows were unlawfully tinted, whereupon he activated his overhead emergency lights and initiated a motor vehicle stop.

Wilson was driving the vehicle.  Loatman was in the front passenger seat and Hooks was in the back seat along with the juvenile.  Zanni identified himself

to Wilson, informed him of the reason for the stop, and asked for his driving credentials. While speaking with Wilson, Zanni detected the strong odor of marijuana. Zanni testified the marijuana odor "emanated throughout the entire vehicle." He never indicated whether the odor was particularly strong in any specific location, such as the vicinity of the glove box.

Zanni asked Wilson if there was anything in the vehicle that "[he] needed to know about." Wilson explained his vehicle's interior smelled like marijuana because he was at a party. Zanni instructed Wilson to turn off the engine and ordered all four occupants to exit the vehicle one at a time. Zanni searched each occupant's person. He found no contraband on Wilson, Loatman, or Hooks. The juvenile became nervous and agitated, cursed at Zanni, and pushed up against the rear of the vehicle in an attempt to prevent Zanni from searching the front of his person.[2]

Other officers arrived to assist Zanni. After searching the occupants but finding no marijuana, Zanni and another officer proceeded to search the vehicle for the source of the odor. They searched the front seat area, backseat, side door, and center console. The other officer tested the glove box and found it to be locked. Zanni instructed the officer to unlock the glove box with the car key

---

[2] Later at the police station, the juvenile turned over two small plastic baggies containing marijuana that were concealed in his underwear.

that had been in the ignition switch.  That search immediately revealed the handguns.

After the handguns were secured, the occupants were advised they were under arrest, handcuffed, and placed in the rear of separate patrol vehicles. Zanni resumed the on-scene search of the vehicle.  He located a mason jar containing marijuana in the trunk area.  He also found a small plastic bag of marijuana in a Cracker Jack box, a digital scale, and numerous unused red plastic baggies.

In July 2019, Wilson, Loatman, and Hooks were charged by indictment with three counts of unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); two counts of possession of a defaced firearm, N.J.S.A. 2C:39-3(d); and possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j). Defendants were also charged with marijuana possession, but those counts were later dismissed based on changes in the marijuana laws.  See note 1.

Defendants moved to suppress the fruits of the warrantless search.  The trial court convened an evidentiary hearing on December 20, 2019, at which Zanni was the sole witness.  At the conclusion of the hearing, the trial court denied defendants' suppression motion, issuing an oral opinion.  Defendants

subsequently filed a renewed motion to suppress, relying on <u>Cohen</u>.[3]  On December 5, 2023, the same judge that heard the initial suppression motion reconsidered his ruling, this time granting defendants' motion.  The trial court concluded the search of the locked glove box exceeded the reasonable scope and intensity of a search permitted under the automobile exception.

In reaching that decision, the trial court reasoned defendants did not have access to the glove box while the car was in operation because the key that opened the glove box was in the ignition.  The trial court further held that when confronted with a locked container, police must impound the vehicle and apply for a warrant.

The trial court stayed its suppression order for forty-five days to allow the State to appeal.  We granted the State's motion for leave to appeal.  This interlocutory appeal followed.

The State raises the following contention for our consideration:

> THE OFFICER'S ENTRY INTO THE GLOVE COMPARTMENT OF THE VEHICLE IN THIS CASE WAS LAWFUL BECAUSE THE OFFICER HAD PROBABLE CAUSE TO SEARCH THE INTERIOR OF THE VEHICLE PURSUANT TO THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT.

---

[3]  Defendants do not contest the lawfulness of the tinted-window stop.  Nor do they contest the detective's authority to initiate an automobile-exception search based on the odor of marijuana.  <u>See</u> note 1.

Hooks filed a brief contending:

> THE MOTION COURT PROPERLY APPLIED OUR SUPREME COURT'S PRECEDENTS TO CONCLUDE POLICE COULD NOT SEARCH THE SEPARATELY ENCLOSED AND LOCKED GLOVE COMPARTMENT BASED SOLELY ON THE CAR'S GENERAL ODOR OF MARIJUANA.

Loatman filed a brief contending:

> THE MOTION JUDGE CORRECTLY APPLIED COHEN'S STATE CONSTITUTIONAL ANALYSIS UNDER NEW JERSEY'S STANDARD AS TO AN UNREASONABLE SCOPE OF A WARRANTLESS AUTOMOBILE SEARCH: THE GENERALIZED SMELL OF MARIJUANA WITHOUT ARTICULATED AND PARTICULARIZED CIRCUMSTANCES SUGGESTING ITS LOCATION IN NON-ACCESSIBLE AREAS OF THE INTERIOR OF THE AUTOMOBILE DOES NOT AUTHORIZE A SEARCH OF SUCH NON-ACCESSIBLE AREAS, SUCH AS THE LOCKED GLOVE COMPARTMENT AT ISSUE HERE. THE AUTHORITY CITED BY THE STATE (GAMMONS, LEWIS) IS INAPPLICABLE: THE LOCKED GLOVE COMPARTMENT IN GAMMONS INVOLVED A CREDENTIALS SEARCH IN THE LOGICAL AREA FOR CREDENTIALS WHILE THE BLACK LEATHER BRIEFCASE IN THE CAR'S INTERIOR IN LEWIS WAS EASILY ACCESSIBLE TO THE OCCUPANTS. NEITHER PARTICULARIZED CIRCUMSTANCES NOR ACCESSIBILITY, BOTH SEEMINGLY REQUIRED BY COHEN, WERE PRESENT HERE.

Wilson relied on and incorporated the briefs submitted on behalf of Hooks and Loatman.

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. As a general matter, "[o]ur standard of review on a motion to suppress is deferential." State v. Nyema, 249 N.J. 509, 526 (2022). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We "defer[ ] to those findings in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Nyema, 249 N.J. at 526 (quoting Elders, 192 N.J. at 244).

In contrast, the trial court's interpretation of the law and the legal "consequences that flow from established facts" are reviewed de novo. State v. Gamble, 218 N.J. 412, 425 (2014); accord State v. Smith, 212 N.J. 365, 387 (2012). We regard the trial court's interpretation and application of Cohen to be a legal conclusion to which we owe no special deference. We likewise deem the determination of the constitutional boundaries of an automobile-exception search to be an interpretation of the law subject to de novo review. Accepting the underlying facts as found by the trial court—which are largely undisputed

by the parties—we determine whether the search of the locked glove box exceeded the scope and intensity allowed under the automobile exception with a fresh set of eyes.

Turning to substantive legal principles, both the Fourth Amendment to the United States Constitution and its analogue, Article I, Paragraph 7 of the New Jersey Constitution, "protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting Nyema, 249 N.J. at 527). The rules governing police conduct, however, are not necessarily the same under federal and New Jersey law, since the New Jersey Constitution may afford defendants greater protections than are afforded by the United States Constitution. Id. at 165-66.

Our Supreme Court has stressed that "[o]ur jurisprudence under both [United States and New Jersey] constitutional provisions expresses a preference that police officers secure a warrant before they execute a search." Witt, 223 N.J. at 422 (citing State v. Frankel, 179 N.J. 586, 597-98 (2004)). That preference finds expression in the bedrock principle that warrantless seizures are presumptively invalid. See State v. Goldsmith, 251 N.J. 384, 398 (2022); see State v. Pineiro, 181 N.J. 13, 19 (2004).

"To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or

seizure falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023), certif. denied, 255 N.J. 506 (2023) (alteration in original) (quoting State v. Chisum, 236 N.J. 530, 546 (2019)). The automobile exception is one such exception. Witt, 223 N.J. at 422.

The government bears the burden of proving probable cause to justify the warrantless search. State v. Baker, 478 N.J. Super. 116, 126 (App. Div. 2024). The "totality of the circumstances" test used in analyzing probable cause, moreover, is substantially consistent under both the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution. See State v. Novembrino, 105 N.J. 95, 122 n.11, (1987) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Probable cause exists where, given the totality of the circumstances, "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Moore, 181 N.J. 40, 46 (2004) (quoting Gates, 462 U.S. at 238). The central component of probable cause "is a well-grounded suspicion that a crime has been or is being committed." State v. Nishina, 175 N.J. 502, 515 (2003) (quoting State v. Sullivan, 169 N.J. 204, 211 (2001)).

The facts constituting probable cause are critical not only in determining whether an automobile-exception search may be initiated, but also in determining the spatial boundaries of the warrantless search. Our Supreme

12                                                                    A-1365-23

Court in Cohen reiterated the long-accepted maxim that "'a search which is reasonable at its inception may [nonetheless] violate the Fourth Amendment by virtue of its intolerable intensity and scope.'" 254 N.J. at 320 (alteration in original) (quoting Terry v. Ohio, 392 U.S. 1, 18 (1968)).

Relatedly, it also is well-established under New Jersey's search-and-seizure jurisprudence that "[t]he scope of a warrantless search of an automobile is defined by the object of the search and the places where there is probable cause to believe that it may be found." State v. Esteves, 93 N.J. 498, 508 (1983). That is a foundational principle critical to our analysis in this case. Simply stated, for an automobile-exception search to be lawful in its physical scope, the probable cause to search must be as to items or effects that, by their nature, could be concealed in the container that was opened. For example, in United States v. Ross, the United States Supreme Court explained, "probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." 456 U.S. 798, 824 (1982).

In Ross, the Court rejected the notion that some containers within a vehicle are more "worthy" of constitutional protection than others. Id. at 822. The Court held,

> the scope of a warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a

lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

[Id. at 825 (emphasis added).]

New Jersey courts have consistently followed the rule announced in Ross that the scope of an automobile-exception search is limited to—but also includes—places/containers that could be holding the object of the probable-cause search. In State v. Probasco, for example, we explained:

> Once the police had probable cause to search the automobile for drugs, they could do so without a warrant under the automobile exception. [Esteves, 93 N.J. at 504-05]. The search could properly include the contents of closed containers found in the vehicle. [Ross, 456 U.S. at 823-24] (cited with apparent approval in Esteves, 93 N.J. at 508, n.3); State v. Nittolo, 194 N.J. Super. 344, 346-47 (App. Div. 1984).

> [220 N.J. Super. 355, 359 (App. Div. 1987).]

In State v. Lewis, we likewise concluded that law enforcement officers lawfully searched a closed leather case contained within the car, explaining:

> Furthermore, the validity of the search was not affected by the fact that the drugs were found in a closed leather case rather than in an open area within the passenger compartment of the van. See State v. Guerra, 93 N.J. 146, 151 (1983) (apparently adopting holding of [Ross, 456 U.S. at 798], that "upon probable cause to search a lawfully stopped vehicle, police may conduct a warrantless search of every part of the vehicle and its contents that may conceal the object of the search"); accord State v. Smith, 306 N.J. Super. 370, 381 (App. Div. 1997).

14

[411 N.J. Super. 483, 490-91 (App. Div. 2010).]

### III.

That brings us to our Supreme Court's recent decision in Cohen, which specifically addressed whether the odor of marijuana in a vehicle authorized a warrantless search of the engine compartment and trunk. 254 N.J. at 312. The Cohen Court did not break new ground, but rather reaffirmed well-established New Jersey precedent limiting the spatial scope of an automobile-exception search. Notably, the Court carefully examined—and built on the foundation—of its much earlier decision in State v. Patino, 83 N.J. 1 (1980).

Patino did not involve a search predicated on the odor of marijuana, but rather a search predicated on visual evidence of a personal use/simple possession drug offense. In Patino, after pulling the defendant's vehicle over, a state trooper noticed a clear plastic container "half-full of green vegetation on the floor near the front seat." Id. at 5. The trooper searched the interior of the vehicle and recovered a marijuana cigarette. Ibid. The trooper next tried to open the glove box, which was locked. Ibid. He ordered the defendant to unlock it and found

"'it was absolutely empty.'"[4]  Id. at 5-6.  Finally, the trooper searched the trunk where he discovered cocaine inside a shopping bag.  Id. at 6.

The Patino Court concluded the search of the trunk exceeded the parameters of the automobile exception.  Id. at 12-13.  The Court held that as a matter of law, the trooper's discovery of only "a small amount of marijuana, consistent with personal use, does not provide [police] with probable cause to believe that larger amounts of marijuana or other contraband are being transported."  Id. at 13.  The Court added, "[a] small amount of marijuana does not alone without other circumstances that suggest participation in drug traffic[king] or possession of more contraband provide justification to extend the zone of the exigent search further than the persons of the occupants or the interior of the car."  Id. at 14-15.

Stated another way, the Patino Court explained that "the bare circumstance of a small amount of marijuana does not constitute a self-evident proposition that more marijuana or other contraband might be elsewhere in the automobile."  Id. at 12.  Ultimately, the Court concluded the search of the trunk

_____

[4] Because nothing was found in the locked glove box, the Patino Court was not required to rule on the lawfulness of ordering the defendant to unlock it to permit a search of its contents.  We nonetheless deem it noteworthy that while the gravamen of the Patino decision is to establish the spatial parameters of an automobile-exception search, the Court did not suggest the search of the glove box was improper because it was locked.

16

compartment was unlawful because, under the automobile exception, not only must an officer have probable cause to believe that contraband is present in the vehicle, "but the search must be reasonable in scope" and "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Id. at 10-11 (quoting Terry, 392 U.S. at 19.)

That brings us back to our Supreme Court's recent decision in Cohen. Besides carefully studying Patino, the Cohen Court canvassed subsequent New Jersey automobile-exception cases and concluded, "[i]n sum, cases in which our courts have upheld searches that extended to the trunk or other areas beyond the passenger compartment have involved facts indicating something more than simply detecting the smell of marijuana from the interior of the car." Cohen, 254 N.J. at 324.

To put Cohen in context, we recount the particular facts in that case. After receiving a tip from a confidential informant that the defendant regularly traveled out of state to acquire firearms to be sold in New Jersey, the State Police issued a "be on the lookout" notice for two of the defendant's vehicles. Id. at 312. After spotting one of those cars on the New Jersey Turnpike, a state trooper followed the vehicle for a few miles before initiating a traffic stop for a suspected toll violation and failure to maintain the lane. Id. at 312-13.

17

When the trooper approached the vehicle, he noticed several air fresheners hanging from the vehicle's rearview mirror. Id. at 314. The trooper asked the defendant and the passenger for their licenses, registration, and car insurance information. Ibid. The defendant told the trooper that he and the passenger were driving back from Washington, D.C., where they visited friends for the weekend. Ibid.

The trooper testified that he smelled "'a strong odor of raw marijuana' in the vehicle during the stop." Ibid. He also observed "'greenish-brown vegetation' on the driver's beard and shirt, which the trooper identified as 'shake,' or 'the tail-end of marijuana.'" Id. at 314-15. He asked the defendant whether he smoked cigarettes because he "'wanted to make sure it wasn't tobacco.'" Id. at 315.

While the defendant and the passenger were handcuffed and in separate patrol cars, the trooper initiated a warrantless search of the vehicle. Ibid. He searched the passenger compartment and recovered a bag containing two shot glasses from the glove compartment. Ibid. One of the glasses contained a shell casing. Ibid. No marijuana was found in the passenger compartment. Ibid.

The trooper continued his search by opening the hood of the car. Ibid. He discovered a rifle and a revolver nestled in the vehicle's engine compartment.

18

Ibid. He then opened the trunk and found a bag containing hollow point bullets.

Ibid. No marijuana was found. Ibid.

On those facts, our Supreme Court suppressed the firearms and ammunition, explaining that "simply detecting the smell of marijuana from the interior of the car," without more, does not justify "searches that extended to the trunk or other areas beyond the passenger compartment." Id. at 324. The Court held:

> [W]hen [the trooper] expanded his search to the engine compartment of the car, he went beyond the scope of the automobile exception. Although he smelled marijuana in the passenger compartment of the car, the trooper's initial search yielded no results and provided no justification "to extend the zone of the . . . search further than the persons of the occupants or the interior of the car."
>
> [Id. at 325 (quoting Patino, 83 N.J. at 14-15).]

The gist of Cohen and Patino is that as a matter of law, probable cause to search the trunk or engine compartment does not exist based solely on suspicion of an occupant's personal use or simple possession of marijuana.

We deem it noteworthy the Cohen Court did not criticize any aspect of the passenger compartment search, including the glove box search. On the contrary, the Court explicitly stated: "[w]e therefore find that the initial search of defendant . . . and the passenger compartment was valid under the automobile

19

exception because the officer had probable cause to initiate that search." Id. at 324 (emphases added).

## IV.

Importantly for purposes of the present appeal, while the Court in Cohen drew a line between places in and outside the vehicle's interior, it made no such demarcation between spaces and containers situated inside the passenger compartment. Indeed, the Court made clear that "[p]ursuant to the automobile exception, if an officer has probable cause to search the interior of the vehicle, that probable cause encompasses the entirety of the interior." Id. at 327 (emphasis added). The Court added:

> This holding [suppressing the weapons found in the engine compartment and trunk] in no way suggests that areas within the interior of the car would require separate probable cause findings in order to conduct a warrantless search. We are not dividing up the interior of vehicles such that an officer would need to establish different or additional probable cause to search the front seat as opposed to the back seat, for example.
>
> [Id. at 327.]

That unambiguous statement answers one of the central questions before us in this case: when police have probable cause to search the passenger compartment, they also have probable cause to search a container located within the passenger compartment—including a glove box—so long as the container is capable of holding the object of the search.

 A-1365-23

Defendants nonetheless contend that a glove box is its own separate compartment and thus not part of the "interior" of a vehicle within the meaning of the Cohen holding. We are unpersuaded. As a matter of common experience as well as common sense, a glove box that opens directly onto the front passenger seat is part of the passenger compartment. It is not part of the engine compartment or trunk/rear storage area. Defendants' argument conflicts with Cohen's firm instruction not to "divide[] up the interior of vehicles." Ibid. We are satisfied that under Cohen's "entirety of the interior" ruling, a glove box clearly falls within the interior region of a vehicle. Ibid.

We likewise reject defendants' argument that Zanni "never vocalized and 'pinpointed' the glove compartment as being a potential source" of the odor emanating generally within the interior. We decline to create a new rule that would essentially require police to follow a scent trail or pre-inspect containers in the passenger compartment before opening them, such as sniffing the glove box's exterior or deploying a drug detection canine to identify the source of the odor with precision. The officers searching inside the passenger compartment were not obliged to pinpoint the odor's source before opening containers within that compartment. Imposing any such sniff-before-opening requirement would effectively "divid[e] up the interior of vehicles" in contravention of the explicit instruction in Cohen. Ibid.

21

Applying the foregoing principles to the largely undisputed facts before us, we conclude the glove box fell within the spatial boundaries of a lawful automobile-exception search because there was probable cause to believe contraband would be found in the passenger compartment, the glove box was located within that compartment, and the glove box was a container that could hold the object of the search for which there was probable cause.

V.

We turn next to the trial court's ruling that the police were not permitted to search the glove box under the automobile exception because it was locked. This appears to be a question of first impression in this State. To address this novel contention analytically, we examine three closely-related arguments: (1) locking the glove box evinced a greater expectation of privacy in its contents, invoking a higher standard of justification for searching it; (2) locking the glove box rendered it inaccessible to the driver and passengers; and (3) opening the locked container was a more "intense" form of physical intrusion than is allowed under the automobile exception.

A.

We first consider the argument that locking the glove box exhibited an elevated expectation of privacy in its contents, effectively taking that container outside the realm of the automobile exception. The trial court reasoned that

when an individual has made a "conscious decision to lock an area of the car," "[w]hether that be a suitcase, a briefcase, or a . . . glovebox," that person enjoys a heightened expectation of privacy, at which point an automobile-exception search should stop, the vehicle should be impounded, and a search warrant sought.

We have no quarrel with the proposition that taking the precaution of locking a built-in compartment or portable container exhibits a subjective intent to shield its contents from others, including law enforcement officers. Of course, the same could be said of other efforts undertaken to keep effects away from prying eyes or hands, including the installation of trap doors and hidden compartments to facilitate smuggling firearms, contraband, and cash proceeds from illegal transactions. We see no constitutionally significant difference between "consciously" locking a glove box or article of luggage, to use the trial court's characterization, and consciously placing the object in a compartment knowing that it locks automatically, such as the trunk in a traditional sedan.[5]

Nor is locking a container meaningfully different—in terms of either subjective intent or constitutional effect—from consciously hiding or

---

[5] We recognize that in many modern SUVs, the rear hatchback can be opened without a key or electronic key fob unless the entire vehicle is locked, in contrast to older vehicles where a trunk lid typically did not have the equivalent of a door handle but rather sprang open by turning a key.

A-1365-23

camouflaging the object sought to be protected from discovery. All of these deliberate precautions are meant to prevent others from seeing, recognizing, or confiscating the concealed objects, and thus evince a greater subjective expectation of privacy than if the person had simply strewn those objects inside the vehicle.[6] The novel question before us is whether any such elevated subjective expectation of privacy categorically renders a locked compartment/container immune from an automobile-exception search.

It seems clear under the Fourth Amendment that no distinction is drawn between locked and unlocked containers for purposes of the automobile exception. See United States v. Mazzone, 782 F.2d 757, 760 (7th Cir. 1986) ("[I]f the police have probable cause to believe that there is contraband or other lawfully seizable material anywhere in the car they can search for it even if it is in a sealed container, or in a closed or even locked compartment such as the glove compartment or the trunk."). In Ross, the United States Supreme Court explained, "[t]he scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is

---

[6] In Ross, the Court remarked that "[c]ontraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container." 456 U.S. at 820.

probable cause to believe that it may be found."  456 U.S. at 824.  Further, "[t]he

scope of a warrantless search based on probable cause is no narrower . . . than

the scope of a search authorized by a warrant supported by probable cause."  Id.

at 823.  Obviously, a locked container—or even a locked home—can be searched

pursuant to a warrant.

Citing to the federal rule does not end our inquiry.  As we have already

noted, we look beyond the Fourth Amendment and federal precedents to

determine whether the same principles apply under Article I, Paragraph 7 of the

New Jersey Constitution.  In Witt, our Supreme Court observed the automobile

exception is based, in part, on the rationale that there is a "lesser expectation of

privacy in an automobile compared to a home."  223 N.J. at 422-23 (emphasis

added) (citing California v. Carney, 471 U.S. 386, 391-93 (1985)).[7]  Even

---

[7]  In Witt, the Court traced the origins and evolution of both the federal and New
Jersey automobile exceptions.  The Court explained:

> The United States Supreme Court has identified three
> rationales for the current automobile exception: (1) the
> inherent mobility of the vehicle, Carroll v. United
> States, 267 U.S. 132, 153 (1925); (2) the lesser
> expectation of privacy in an automobile compared to a
> home, [Carney, 471 U.S. at 391-93]; and (3) the
> recognition that a Fourth Amendment intrusion
> occasioned by a prompt search based on probable cause
> is not necessarily greater than a prolonged detention of
> the vehicle and its occupants while the police secure a

accepting that motorists who take the precaution of locking a glove box have a higher subjective expectation of privacy in its contents than if they had left the glove box unlocked, our courts have never equated that heightened expectation to the expectation of privacy in a home.

No one disputes that the contents of a closed glove box, whether locked or not, are entitled to constitutional protection against unreasonable searches and seizures. Indeed, everything in an automobile—and the vehicle itself—is protected under Article I, Paragraph 7, as shown by the fact a detained vehicle cannot be searched without a warrant or pursuant to a recognized exception to the warrant requirement. But as the United States Supreme Court noted in Ross, the practical consequences of the automobile-exception doctrine "would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle." 456 U.S. at 820. That observation is important to our analysis under the State Constitution, considering that in Witt, our Supreme Court revamped the elements of the automobile exception based in part on the need for a "practicable and workable standard capable of producing fairly uniform results." 223 N.J. at

_____

> warrant, [Chambers v. Maroney, 399 U.S. 42, 51-52 (1970)].
>
> [Id. at 422-23.]

A-1365-23

432.[8]  The <u>Witt</u> Court, in other words, sought to restore the automobile exception, not render it useless for all practical purposes by allowing motorists to exempt otherwise searchable containers in a vehicle simply by expressing a heightened subjective expectation of privacy in them.

Importantly, locking a glove box does not eviscerate any of the rationales for having a workable automobile exception as contemplated in <u>Witt</u>. <u>See</u> <u>supra</u> note 7. Whether locked or not, a glove box is just as "readily mobile" as the vehicle and thus its contents are subject to the same inherent risks associated with mobility that gives rise to the automobile exception. <u>See</u> <u>id.</u> at 422.

So too, requiring a vehicle to be impounded and searched pursuant to a warrant because the glove box is locked might unintentionally denigrate, not advance, motorists' constitutional interests. As our Supreme Court stressed in <u>Witt</u>, "[t]he third rationale [for the automobile exception], and in many ways the most compelling one, is that, for Fourth Amendment purposes, an immediate search of a vehicle may represent a lesser intrusion than impounding the vehicle and detaining its occupants while the police secure a warrant." <u>Id.</u> at 424.

---

[8] In <u>Witt,</u> our Supreme Court jettisoned as "unsound in principle and unworkable in practice" the multi-factor exigency test the Court used in <u>State v. Cooke</u>, 163 N.J. 657 (2000), and amplified in <u>State v. Pena-Flores</u>, 198 N.J. 6 (2009). <u>Witt,</u> 223 N.J. at 447.

In State v. Hunt, Justice Handler offered comprehensive guidance on when the New Jersey Constitution should be interpreted to provide greater protections against unreasonable searches and seizures than are afforded under the United States Constitution. 91 N.J. 338, 358-68 (1982) (Handler, J., concurring). He identified "preexisting state law" and "state traditions" as important factors. Id. at 365-67. In this instance, adopting a locked-container exemption would not only diverge from federal precedent, but also from our State's own experience with the automobile exception. We thus conclude that regardless of an individual's subjective expectation of privacy, the constitutional protections afforded to items in a locked glove box are no greater than the constitutional protections afforded to personal effects consciously placed in a vehicle's locked trunk, which have long been subject to lawful automobile-exception searches.

For all these reasons, we decline to reformulate the automobile exception to allow motorists to unilaterally render portions of a vehicle immune from an automobile-exception search by their conscious actions to secret or secure objects they hope to conceal from police or others.

B.

We next address defendants' contention that "[a] locked glove compartment does not suggest accessibility to that compartment." As we have noted, the trial court found defendants did not "have any access to the glove box

28

while the car was in operation because the key that opened the glove box was in the ignition."  Although we defer to that factual finding, see Nyema, 249 N.J. at 526, as a matter of law, accessibility is not a required element of the automobile exception and thus has no bearing on the lawfulness of the glove-box search under that doctrine.

The elements of the automobile exception must not be conflated with the elements of the distinct search-incident-to-arrest exception, which is limited to the area "within [the arrestee's] immediate control."  Chimel, 395 U.S. at 763. In Witt, which focused on the requirements of the automobile exception, our Supreme Court stressed, "[s]ignificantly, we also made clear in Alston . . . that merely because 'the particular occupants of the vehicle may have been removed from the car, arrested, or otherwise restricted in their freedom of movement,' police were not required to secure a warrant."  223 N.J. at 428 (quoting Alston, 88 N.J. 211, 234 (1981)).  It is thus clear that under New Jersey law, the permissible scope of an automobile-exception search does not depend on whether compartments or containers within the vehicle are accessible to the suspects, either when those compartments/containers were loaded, during the operation of the vehicle, or at the time of the warrantless search.

C.

29

Finally, we consider the trial court's ruling that "an otherwise lawful search becomes unreasonable when the police either have to break into a . . . separately secured container or have to use a key to open it." As we have noted, and as the Cohen Court stressed, a search that is reasonable at its inception may become unlawful "by virtue of its intolerable intensity and scope." 254 N.J. at 320 (emphasis added) (quoting Terry, 392 U.S. at 18). We interpret this search-and-seizure axiom to impose limitations not just on the spatial boundaries of an automobile-exception search, that is, where within a vehicle the search may extend, but also on the techniques and tools police may employ to execute the search, that is, limits on the degree of mechanical force that may be used and the amount of damage to personal property that will be tolerated.

There is scant published precedent in New Jersey on this issue. In State v. Murray, a case cited in Patino, we concluded that "where . . . the only basis for the search is an empty roach clip and a vial containing traces of marihuana, a search which interferes with the structural integrity of the vehicle itself is fatally excessive in its scope." 151 N.J. Super. 300, 308 (App. Div. 1977). In that case, the State trooper removed the driver's seat and found an attaché case. Id. at 305. The trooper used a knife to force the lock on the case, revealing a sizeable quantity of hashish. Ibid. We held the defendant's motion to suppress the contents of the attaché case should have been granted, reasoning that "when

A-1365-23

the officer, unsuccessful to that point in uncovering additional contraband, commenced interfering with the structural integrity of the vehicle itself, the search he was conducting transcended all bounds of reasonableness." Id. at 307.

In the matter before us, the trial court drew no distinction between breaking open a locked glove box or using a key to unlock it. We think that distinction is critical and dictates the result in this case. Using a key to open a lock does not interfere with the structural integrity of a vehicle. Nor does it produce any damage, much less damage that is excessive or unnecessary.

We acknowledge that police entry into a protected space by any manner or means constitutes a Fourth Amendment/Article I, Paragraph 7 privacy intrusion. Thus, with respect to the spatial limitation prescribed by the scope of probable cause, see supra section III, unauthorized entry with a key is no different than any other method for gaining unauthorized access to a particular space or container in the vehicle. But with respect to the analytically distinct limitation on the intensity of an automobile-exception search, we deem the use of a key to open a locked container or compartment to be qualitatively different from using a pry bar or similar instrumentality, or brute force, to break open the container or compartment. The New Jersey automobile exception, it bears

A-1365-23

noting, is designed to permit unplanned, _expeditious_ roadside searches.[9]  This warrant exception, as circumscribed under Article I, Paragraph 7, does not contemplate disassembling a vehicle or using the jaws of life to find the objects of the search.

That said, we have no occasion in this case to consider what level of intensity or damage would exceed the permissible boundaries of the automobile exception.  Here, there was _no_ insult to the structural integrity of the vehicle and _no_ damage caused to the glove box.  We deem the manner in which Zanni and the other officer opened the locked glove box to be eminently reasonable and thus lawful under Article I, Paragraph 7.

In sum, we conclude the police were authorized under the automobile exception to search the glove box for marijuana and executed that search in a reasonable manner.  Accordingly, the handguns that came into plain view when

---

[9]  Under _Witt_, an automobile-exception search must be conducted at roadside, before the vehicle is towed and impounded.  _See_ _State v. Courtney_, 478 N.J. Super. 81, 94, (App. Div.), _leave to appeal denied_, ___ N.J. ___ (2024).  The _Witt_ Court referred repeatedly to the dangers posed to police officers and a car's driver and occupants associated with extended stops on the sides of heavily-traveled highways and roads.  223 N.J. at 427, 435, 442.  Those concerns—which relate to the exigency that justifies the automobile exception—counsel against protracted roadside searches that entail, for example, figuring out how to safely access trap doors and hidden compartments, or otherwise interfering with the structure of a vehicle.

the glove box was opened were lawfully seized and should not have been suppressed.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1365-23